[Cite as *State v. Barker*, 2022-Ohio-3756.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29227 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-1747 |
| | : | |
| CARSON D. BARKER | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 21st day of October, 2022.

. . . . . . . . . . .

MATHIAS H. HECK, JR. by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

JOHNNA M. SHIA, Atty. Reg. No. 0067685, P.O. Box 145, Springboro, Ohio 45066
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

EPLEY, J.

{¶ 1} Carson D. Barker was convicted in the Montgomery County Court of Common Pleas of murder with a firearm specification, discharge of a firearm on or near prohibited premises with a firearm specification, and having weapons while under disability. The trial court imposed an aggregate prison sentence of a minimum term of 29 years to life and a maximum term of 33 years to life, plus restitution.

{¶ 2} Barker appeals from his convictions. He claims that the trial court erred in its jury instructions related to self-defense, that his convictions were against the manifest weight of the evidence, that the trial court infringed upon his constitutional rights by repeatedly admonishing him during his testimony, that trial counsel rendered ineffective assistance, that cumulative error deprived him of a fair trial, that his sentence under the Reagan Tokes Act was unconstitutional and contrary to law, and that the record did not support consecutive sentences. For the following reasons, the trial court's judgment will be affirmed in part and reversed in part, and the matter will be remanded for further proceedings.

## I. Facts and Procedural History

{¶ 3} Shortly before 6:00 p.m. on May 26, 2019, Barker walked from a bus stop toward his mother's home, which was located on West Second Street just west of the intersection with North Antioch Street. As he came down the sidewalk on North Antioch Street, Barker saw Christopher Campbell seated in his red Chevy Tahoe. The Tahoe was parked on West Second Street near the residence of Barker's mother. The parties dispute why Campbell was there. Campbell's fiancée testified that he went to visit Moses Goodman, Campbell's friend and Barker's step-father.

{¶ 4} Under Barker's version of events, Campbell had been following and menacing Barker for a couple of months, which caused Barker to be fearful that Campbell would harm him. Campbell had told Barker that he was upset that Barker's uncle had "told on him" for selling drugs. (Multiple kinds of illegal drugs were located in Campbell's vehicle.) Barker knew that Campbell had killed before, and Campbell previously had "clutched" his gun when speaking with Barker, which was perceived as a threat. Following that incident, Barker had purchased a gun for his protection. Barker testified that, approximately a month prior, he had approached Campbell at a gas station and asked him why he (Campbell) was following him (Barker); Campbell had denied that he was following Barker. Barker testified that when he saw Campbell parked by his mother's house on May 26, his intention was to ask Campbell to stop.

{¶ 5} Upon seeing the Tahoe, Barker cut across the empty lot at the northwest intersection of West Second and North Antioch. As he neared Campbell's vehicle, Barker fired his gun at the passenger side of the Tahoe. Barker and the State disagreed as to how close Barker was to Campbell's vehicle before Barker began shooting. Campbell exited his Tahoe, Barker circled around the front of the vehicle, and the two became involved in a shoot-out during which Campbell was shot once. Barker testified that, before he fired at the Tahoe, he saw Campbell look at him and pull out his gun. No eyewitness corroborated that Campbell had drawn first, and Barker later said that he did not think Campbell saw him before he began shooting.

{¶ 6} Barker testified that when he ran out of bullets, he ran backward toward North Antioch. Barker reloaded, fired an additional shot, and then left the area on foot. Barker

stated that he did not realize at that time that Campbell had been shot. Campbell re-entered his Tahoe, drove a short distance away, and crashed at a school playground.

{¶ 7} Barker's mother, who saw the shooting, told investigating police officers the identities of the men involved, and another witness, who did not know the men, provided a physical description of Barker. A third witness testified that she saw the shooter (Barker) go through a church parking lot to Third Street and head toward downtown Dayton. Officers located Barker at his downtown residence that evening and arrested him for felonious assault. An officer found Barker's loaded 9mm handgun and an additional magazine during a search incident to Barker's arrest. The next day, Campbell died at the hospital from a single gunshot wound to his abdomen.

{¶ 8} During the investigation of the shooting, officers located 12 spent 9mm bullet casings that had been fired from Barker's gun: nine were located on West Second Street to the west of the intersection with North Antioch Street, two were nearby in the grass just north of the sidewalk on the north side of West Second Street, and one was on North Antioch more than 45 feet north of the intersection. Broken glass was located near one of the western-most 9mm casings. Upon processing the Tahoe, an evidence technician found two bullet holes in the SUV's windshield and several bullet strikes to the vehicle's passenger side, including the front windshield support, rear window, rear cargo window frame, and taillight area. Several of the bullets had been fired toward the driver's seat. A spent 9mm bullet from Barker's gun was located in a rear door. Another was recovered from Campbell's body during his autopsy.

{¶ 9} Five spent .40 caliber bullet casings were found on North Antioch Street near

the stop sign at the southeast corner of the intersection with West Second Street. Testing showed that those casings came from Campbell's gun, which was recovered from his Tahoe. A spent .40 caliber bullet was found on West Second Street near one of the spent 9mm casings.

{¶ 10} Three months later, Barker was charged in a nine-count indictment with two counts of murder, two counts of felonious assault, discharge of a firearm on or near prohibited premises, two counts of having weapons while under disability, and two counts of tampering with evidence (clothing and gun). Five of the charges included a firearm specification.

{¶ 11} Prior to trial, Barker requested a jury instruction on self-defense consistent with the changes to R.C. 2901.09 enacted in Am.S.B. 175 (the "stand your ground" law), effective April 6, 2021. Relying on *State v. Irvin*, 2020-Ohio-4847, 160 N.E.3d 388 (2d Dist.), the trial court denied the request, reasoning that there was no language in R.C. 2901.09 that expressly indicated that the General Assembly intended the statute to apply retroactively. Decision (June 7, 2021).

{¶ 12} The State asked the trial court for three specific jury instructions: (1) consciousness of guilt, (2) a definition of "fault" consistent with *State v. Wallace-Lee*, 2d Dist. Greene No. 2019-CA-19, 2020-Ohio-3681, for purposes of self-defense, and (3) the castle doctrine with respect to Campbell's (the victim's) duty to retreat. Defense counsel opposed the State's requested instructions on fault and the castle doctrine.

{¶ 13} In June 2021, the matter proceeded to a bench trial on the two counts of having weapons while under disability and to a jury trial on the remaining charges and

specifications.   At the jury trial, the State presented 14 witnesses and numerous exhibits; Barker testified in his own defense.   After the conclusion of the presentation of evidence, the trial court provided jury instructions, which included the instructions requested by the State.   The jury found Barker not guilty of both counts of tampering with evidence but guilty of the remaining charges and specifications before it.   The trial court found him guilty of having weapons while under disability.

{¶ 14} At sentencing, pursuant to the Reagan Tokes Act, the trial court imposed an indefinite sentence of a minimum of 8 years and a maximum of 12 years for discharge of firearm on or near prohibited premises (Count 5), plus an additional three years for the accompanying firearm specification.   After merging the felonious assault and murder counts, the trial court imposed 15 years to life in prison for murder (Count 2), plus an additional three years for the firearm specification, to be served prior to the sentence on Count 5.   The court merged the two counts of having weapons while under disability and ordered Barker to serve three years in prison on Count 9, to be served concurrently. Barker was notified that he would be required to register annually with the violent offender database for 10 years following his release from prison.   The court ordered Barker to pay $4,508.78 in restitution to the victim's family, but it waived costs and fees.

{¶ 15} Barker appeals from his convictions, raising seven assignments of error. We find his first assignment of error to be dispositive and, therefore, overrule his remaining assignments of error as moot.

## II. Jury Instructions

{¶ 16} In his first assignment of error, Barker claims that the trial court abused its

discretion when it instructed the jury on self-defense.

{¶ 17} Jury instructions "must be given when they are correct, pertinent, and timely presented." *State v. Joy*, 74 Ohio St.3d 178, 181, 657 N.E.2d 503 (1995). A trial court must fully and completely give jury instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact-finder. *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus; *State v. Portis*, 2d Dist. Montgomery No. 28677, 2021-Ohio-608, ¶ 46.

{¶ 18} We review a trial court's jury instructions for an abuse of discretion. *Portis* at ¶ 47, citing *State v. Jones*, 2015-Ohio-5029, 52 N.E.3d 263, ¶ 13 (12th Dist.). "An appellate court may not reverse a conviction in a criminal case based upon jury instructions unless 'it is clear that the jury instructions constituted prejudicial error.' " *Id.* We must review the instructions as a whole, and, if taken in their entirety, the instructions fairly and correctly state the law applicable to the evidence presented at trial, reversible error will not be found premised upon the possibility that the jury may have been misled. *Id.*

{¶ 19} A person may act in self-defense, defense of another, or defense of that person's home. R.C. 2901.05(B)(1). To warrant an instruction on self-defense, there must be evidence presented that supports the conclusion that the defendant used force to defend himself or herself. *Id.* If the defendant puts forth evidence that he or she acted in self-defense, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense. R.C. 2901.05(B)(1); *State v. Lovett*, 2d Dist. Montgomery No. 29240, 2022-Ohio-1693, ¶ 40.

{¶ 20} On appeal, Barker claims that the trial court gave "confusing and inconsistent" jury instructions on self-defense in several ways. First, he claims that the court provided confusing instructions by including the requirements for self-defense when non-deadly force is used. Second, he asserts that the trial court should have instructed the jury that he had no duty to retreat before using deadly force, consistent with the most recent revisions to R.C. 2901.09. Third, he contends that the jury should not have been instructed that Campbell had no duty to retreat under the castle doctrine. Finally, he argues that the court abused its discretion in providing the definition of fault requested by the State.

### A. Non-Deadly v. Deadly Force/ Confusing Instructions

{¶ 21} When self-defense is raised, different standards apply depending on whether the defendant responded with deadly or non-deadly force. *State v. Rothermel*, 2d Dist. Montgomery No. 26004, 2014-Ohio-3168, ¶ 12, citing *State v. New*, 10th Dist. Franklin No. 92AP-04, 1994 WL 521253, *2 (Sept. 20, 1994). "Deadly force" is defined as "any force that carries a substantial risk that it will proximately result in the death of any person." R.C. 2901.01(A)(2). The use of a gun constitutes deadly force. *State v. Dale*, 2d Dist. Champaign No. 2012-CA-20, 2013-Ohio-2229, ¶ 15.

{¶ 22} Self-defense involving the use of deadly force requires the defendant to produce evidence of three elements: (1) the defendant was not at fault in creating the violent situation, (2) the defendant had a bona fide belief that he or she was in danger of death or great bodily harm and that the only way to escape was the use of force, and (3) the defendant did not violate any duty to retreat. *Lovett*, 2d Dist. Montgomery No. 29240,

2022-Ohio-1693, at ¶ 41; *State v. Martin*, 2d Dist. Montgomery No. 27220, 2017-Ohio-7431, ¶ 39, citing *State v. Williford*, 49 Ohio St.3d 247, 551 N.E.2d 1279 (1990).

**{¶ 23}** Historically, because of the third element, a person generally could not kill in self-defense if he or she had a reasonable means of retreat from the confrontation. *See State v. Thomas*, 77 Ohio St.3d 323, 326, 673 N.E.2d 1339 (1997), citing *Williford* at 250. An exception, known as the "castle doctrine," applied if a confrontation happened in a person's home, in which case there was no duty to retreat. Former R.C. 2901.09(B) (effective Sept. 9, 2008). Former R.C. 2901.09(B) extended that exception to the person's or immediate family member's vehicle.

**{¶ 24}** In contrast, self-defense involving the use of non-deadly force requires evidence that: (1) the defendant was not at fault in creating the situation giving rise to the altercation; (2) the defendant had reasonable grounds to believe and an honest belief, even if mistaken, that the defendant was in imminent danger of bodily harm; and (3) the only means of protecting himself or herself from that danger was by the use of force not likely to cause death or great bodily harm. *Koch* at ¶ 37, citing *State v. Coleman*, 2d Dist. Montgomery No. 27666, 2018-Ohio-1951, ¶ 13. There is no duty to retreat in cases involving non-deadly force. *State v. Brown*, 2017-Ohio-7424, 96 N.E.3d 1128, ¶ 25 (2d Dist.).

**{¶ 25}** In this case, Barker used deadly force. At trial, the trial court informed the jury that to prove Barker did not use deadly force in self-defense, the State was required to prove beyond a reasonable doubt at least one of the following: (1) Barker was at fault in creating a situation giving rise to the shooting of Christopher Campbell, (2) Barker *did*

*not have reasonable grounds to believe or did not have an honest belief, even if mistaken,* that he was in imminent or immediate danger of death or great bodily harm, (3) Barker violated a duty to retreat or escape to avoid the danger, or (4) Barker *did not use reasonable force.* The court instructed the jury as to the reasonableness of the use of force, stating:

A person is allowed to use force that is reasonably necessary under the circumstances to protect himself from an apparent danger. The state must prove beyond a reasonable doubt that the defendant used more force than reasonably necessary and that the force used was greatly disproportionate to the apparent danger.

In deciding whether the force used was greatly disproportionate to the apparent danger, you may consider whether the force used shows revenge or a criminal purpose.

**{¶ 26}** Barker asserts that the trial court improperly used non-deadly force language when instructing the jury on what he was required to believe and on the use of reasonable force. He also argues that the instructions "suggested to the jury that Barker had a duty to retreat because he was at fault in creating the situation giving rise to the shooting of Campbell because he was the initial aggressor, or shot first, which was excessive because it was out of revenge or for a criminal purpose."

**{¶ 27}** Barker initially appears to question the use of the phrase "had reasonable grounds to believe and an honest belief, even if mistaken." Although courts have used the phrase "bona fide belief" with respect to deadly force and the phrase "had reasonable

grounds to believe and an honest belief, even if mistaken" as to non-deadly force, the principle involved is the same. Self-defense requires evidence that the defendant had both an objectively reasonable belief and a subjective belief that force was necessary to protect himself or herself. *State v. Blair*, 2d Dist. Montgomery No. 28904, 2021-Ohio-3370, ¶ 11; *State v. Kucharski*, 2d Dist. Montgomery No. 20815, 2005-Ohio-6541, ¶ 18. The trial court did not misstate the law or create confusion by using the phrase "did not have reasonable grounds to believe or did not have an honest belief, even if mistaken" in this deadly force case.

{¶ 28} Next, Barker challenges the inclusion of an instruction on the use of reasonable force. We have explained that the second element of self-defense (bona fide belief) "requires consideration of the force that was used in relation to the danger the accused believed he was in." *Rothermel* at ¶ 14, citing *State v. Bayes*, 2d Dist. Clark No. 2000-CA-32, 2000 WL 1879101, *4 (Dec. 29, 2000). It is well established that a person may only use "that force which is reasonably necessary to repel the attack." *State v. Paschal*, 2d Dist. Montgomery No. 18262, 2001 WL 395354, *2 (Apr. 20, 2001), quoting *Williford*, 49 Ohio St.3d at 249, 551 N.E.2d 1279; *State v. James*, 2d Dist. Montgomery No. 28892, 2021-Ohio-1112, ¶ 21. If the force used was so disproportionate that it shows a purpose to injure, self-defense is unavailable. *Wallace-Lee*, 2d Dist. Greene No. 2019-CA-19, 2020-Ohio-3681, at ¶ 43, quoting *State v. Macklin*, 8th Dist. Cuyahoga No. 94482, 2011-Ohio-87, ¶ 27. This principle applies in both deadly and non-deadly force cases. *See Rothermel* at ¶ 20. In short, the trial court did not improperly provide instructions related to the use of non-deadly force in this case.

{¶ 29} Third, Barker claims that the trial court confused the jury with its instruction on his duty to retreat. When deadly force is used and a duty to retreat exists (which we will assume for purposes of our analysis here), the defendant has an initial burden of showing that he or she had no means of retreat or avoidance was available to him or her and that the only means of escape or avoidance was the deadly force that was used. *Dale,* 2d Dist. Champaign No. 2012-CA-20, 2013-Ohio-2229, at ¶ 15.

{¶ 30} The trial court instructed the jury on Barker's duty to retreat as follows:

The defendant had a duty to retreat if he was at fault in creating the situation giving rise to the shooting of Christopher Campbell, or did not have reasonable grounds to believe and an honest belief that he was in imminent or immediate danger of death or great bodily harm; or had a reasonable means of escape from that danger other than by the use of deadly force.

A person has a duty to retreat, if possible, before resorting to deadly force.

This instruction comported with the Ohio Jury Instruction based on former R.C. 2901.09(B).

{¶ 31} We recognize that Barker objected to an instruction that he had a duty to retreat based on the recent change in the "stand your ground" law. However, after the trial court concluded that he was not entitled to an instruction under current R.C. 2901.09(B), Barker did not then object to the wording of the trial court's jury instruction on his duty to retreat. Accordingly, we review the wording of the trial court's instruction for plain error. *State v. McShann*, 2d Dist. Montgomery No. 27803, 2019-Ohio-4481, ¶ 46. Plain error arises only when, "but for the error, the outcome of the trial clearly would have

been otherwise." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus.

{¶ 32} We note that at least one judge of this court has commented that the instruction in former *Ohio Jury Instructions* CR Section 421.19 (which previously addressed self-defense with deadly force) was "wrong, inadequate, and the result of circular reasoning." *Dale*, 2d Dist. Champaign No. 2012-CA-20, 2013-Ohio-2229, at ¶ 41 (Hall, J., concurring). He reasoned:

> * * * The standard jury instruction regarding a duty to retreat is found at O.J.I. 421.19. The trial court's instruction below mirrored that pattern instruction. But it is wrong. The three parts of the [self-defense] instruction are cumulative. A defendant must prove all three. For ease of discussion, I have shortened the elements. To prove self defense, a defendant first must prove (a) that he was not at fault and (b) that he reasonably believed he was in grave danger and deadly force was reasonable. So far, so good. The final part of the pattern instruction requires a defendant to prove (c) that he did not violate a duty to retreat. To find a duty to retreat, however, a jury must find either that a defendant was at fault or that he was unreasonable. But these inquiries involve determinations that a jury already will have made under (a) and (b) above. If a jury had found that a defendant was at fault or was unreasonable, he

could not rely on self defense anyway. In that situation, the jury never would reach the duty-to-retreat issue. Conversely, if a jury found that a defendant was not at fault and was reasonable, it could not logically change its mind and reach a contrary conclusion on the duty-to-retreat issue. Thus, as the pattern instruction is worded, there never will be a duty to retreat. A jury's findings on parts (a) and (b) of the self-defense instruction will determine the applicability of the defense. The instruction regarding a duty to retreat is wrong and is the result of circular reasoning.

The duty-to-retreat instruction should more clearly explain that a person cannot employ deadly force if he knows he can avoid such force by using a readily available, completely safe means of retreat or escape. * * *

*Id.* at ¶ 45 (Hall, J., concurring.) Judge Hall nevertheless concluded that no plain error occurred, stating, "Because a logical analysis of the inaccurate O.J.I. duty-to-retreat instruction leads me to the inescapable conclusion that if self defense is applicable there is never a duty to retreat, the defendant was not prejudiced by the superfluous duty-to-retreat instruction." *Id.* at ¶ 47.

{¶ 33} Upon review, we find no plain error in the trial court's instruction on Barker's duty to retreat (again, assuming for sake of this analysis that it exists). Barker was not prejudiced by the instruction and we find no basis to conclude that the instruction affected the outcome of his trial.

**B. Barker's Duty to Retreat**

{¶ 34} Barker further claims that the trial court erred in failing to provide an

instruction on his duty to retreat in accordance with the April 6, 2021 amendments to R.C. 2901.09 (the "stand your ground" law).

{¶ 35} Ohio's self-defense laws have been in a state of flux over the course of the last several years. In 2019, S.B. 228 altered R.C. 2901.05, making self-defense no longer an affirmative defense. Instead, the burden was shifted "from the defendant to the state to prove beyond a reasonable doubt that the accused did not use force in self-defense." *State v. Brooks*, Ohio Slip Opinion No. 2022-Ohio-2478, __ N.E.3d __, ¶ 6. Then, in April 2021, S.B. 175 took effect, amending R.C. 2901.09 to eliminate the duty to retreat whenever a person is anywhere he or she has a right to be.

{¶ 36} The current version of R.C. 2901.09, as amended by S.B. 175, provides, in relevant part:

(B) For purposes of any section of the Revised Code that sets forth a criminal offense, a person has no duty to retreat before using force in self-defense * * * if that person is in a place in which the person lawfully has a right to be.

(C) A trier of fact shall not consider the possibility of retreat as a factor in determining whether or not a person who used force in self-defense * * * reasonably believed that the force was necessary to prevent injury, loss, or risk to life or safety.

{¶ 37} The trial court denied Barker's request based on *State v. Irvin*, 2020-Ohio-4847, 160 N.E.3d 388 (2d Dist.), which held that the burden-shifting changes to the self-defense statute, enacted in H.B. No. 228, applied only to offenses committed after the

effective date of the amendment and did not apply retroactively. Although *Irvin*, an appeal of which is pending before the Ohio Supreme Court, has not yet formally been reversed, it is no longer good law. The Ohio Supreme Court recently held that H.B. No. 228 is not retroactive and applies to all pending and new trials that occur on or after its effective date (March 28, 2019). *Brooks.* Nevertheless, due to differences in the language of the amendments to R.C. 2901.05 and R.C. 2901.09, *Brooks* is not dispositive of the issue here.

{¶ 38} "A statute is presumed to be prospective in its operation unless expressly made retrospective." R.C. 1.48; *Brooks* at ¶ 9. *See also Hyle v. Porter*, 117 Ohio St.3d 165, 2008-Ohio-542, 882 N.E.2d 899, ¶ 9 (a statute cannot be applied retroactively unless the legislature expressly makes it retroactive). To overcome the presumption that the statute applies prospectively, it must "clearly proclaim its retroactive application." *Id*. at ¶ 10. In this case, we find no language in the amended R.C. 2901.09 that would indicate the legislature obviously intended the statute to be applied retroactively. *State v. Degahson*, 2d Dist. Clark No. 2021-CA-35, 2022-Ohio-2972, ¶ 17; *accord State v. Hurt*, 8th Dist. Cuyahoga No. 110732, 2022-Ohio-2039, ¶ 58 ("There is no language in amended R.C. 2901.09 indicating that the General Assembly intended the statute to be applied retroactively.").

{¶ 39} Even assuming the legislature clearly intended for the amended R.C. 2901.09 to apply retroactively, the statute would run afoul of the Ohio Constitution, which provides that the "general assembly shall have no power to pass retroactive laws." Ohio Constitution, Article II, Section 28. "Generally, when the legislature has made a statute

expressly retroactive, the determination whether the statute is unconstitutionally retroactive * * * depends on whether it is 'remedial' or 'substantive.' " *Brooks* at ¶ 10. If the law is remedial in nature, then its retroactive application is constitutional; if the law is substantive, then applying it retroactively is unconstitutional. *Id.* "Laws relating to procedures – rules of practice, courses of procedure, and methods of review – are ordinarily remedial in nature. But laws affecting rights, which may be protected by procedure, are substantive." (Citations omitted.) *Id.*

**{¶ 40}** We have found R.C. 2901.09 to be substantive in nature. *Degahson* at ¶ 19. Prior to the passage S.B. 175, a person, unless in his or her residence or vehicle, had a duty to retreat before using force in self-defense. Former R.C. 2901.09(B). Senate Bill 175 modified the law to read: "a person has no duty to retreat before using force in self-defense * * * if that person is in a place in which the person lawfully has a right to be." R.C. 2901.09(B). The change did more than just alter a procedure; it expanded the law, creating a new right: the right to stand one's ground. A person is no longer limited to their home or vehicle; the use of force in self-defense can now be used anywhere the person is legally permitted to be. Appellate courts across the country have similarly held that changes to "stand your ground" laws are substantive in nature and thus do not allow for retroactive application. *Degahson* at ¶ 20 (citing cases from Alaska, Louisiana, Florida, Michigan, and Kentucky).

**{¶ 41}** Finally, the trial court's decision not to give Barker's requested instruction was consistent with R.C. 1.58. "If a statute is amended and becomes effective while the defendant's case is pending in the trial court, then its applicability to the defendant's case

is guided by R.C. 1.58." *Hurt,* 8th Dist. Cuyahoga No. 110732, 2022-Ohio-2039, at ¶ 60, quoting *State v. Stiltner*, 4th Dist. Scioto No. 19CA3882, 2021-Ohio-959, ¶ 54. That statute provides:

> (A) The reenactment, amendment, or repeal of a statute does not, except as provided in division (B) of this section:
>
> (1) Affect any validation, cure, right, privilege, obligation, or liability previously acquired, accrued, or incurred thereunder;
>
> (2) Affect any violation thereof or penalty, forfeiture, or punishment incurred in respect thereto, prior to the amendment or repeal;
>
> (3) Affect any investigation, proceeding, or remedy in respect of any such privilege, obligation, liability, penalty, forfeiture, or punishment, and the investigation, proceeding, or remedy may be instituted, continued, or enforced, and the penalty, forfeiture, or punishment imposed, as if the statute had not been repealed or amended.
>
> (B) If the penalty, forfeiture, or punishment for any offense is reduced by a reenactment or amendment of a statute, the penalty, forfeiture, or punishment, if not already imposed, shall be imposed according to the statute as amended.

**{¶ 42}** Since the statute was amended while Barker's case was pending, R.C. 1.58 must be applied. Senate Bill 175 does not set out a penalty, punishment, or forfeiture, but instead provides substantive law creating a right to "stand your ground." *See Degahson* at ¶ 22. Therefore, R.C. 1.58 dictated that the trial court apply the former

version of R.C. 2901.09 to Barker's case. *Id.*; *Stiltner* at ¶ 55.

**{¶ 43}** Because the new "stand your ground" law was not expressly made retroactive and it constitutes a substantive amendment, the trial court did not err in failing to give an instruction on Barker's duty to retreat in accordance with S.B. 175.

**C. Fault**

**{¶ 44}** Barker next challenges the trial court's jury instruction on "fault." He claims that the second paragraph was inconsistent with the "stand your ground" law and inappropriate for the facts of this case.

**{¶ 45}** At trial, the trial court defined "fault" as follows:

The Defendant did not act in self-defense if the State proved beyond a reasonable doubt that the Defendant was at fault in creating the situation that resulted in the death. The Defendant was at fault if the Defendant was the initial aggressor, and Christopher Campbell did not escalate the situation to deadly force or the Defendant did not withdraw from the situation.

"Fault", as used in the definition of self-defense, is as follows. The Defendant, Carson Barker, was at fault in creating the situation, giving rise to the shooting of Christopher Campbell if the State proved beyond a reasonable doubt that *he chose to confront Christopher Campbell or chose to knowingly go to a place where Christopher Campbell was or refused to move in a direction away from Christopher Campbell, even when the Defendant, Carson Barker's, actions were otherwise lawful*.

(Emphasis added.) Although Ohio Jury Instructions are not binding authority, the first paragraph of the trial court's instruction is consistent with Ohio Jury Instruction 421.21 (effective April 6, 2021). The State acknowledges that the second paragraph does not track the Ohio Jury Instruction language.

{¶ 46} The second paragraph was based on the language cited in *Wallace-Lee*, 2d Dist. Greene No. 2019-CA-19, 2020-Ohio-3681. In that case, Wallace-Lee and the victim, Tre-Ana Tarver, used Facebook to engage in a series of communications during which they argued over a man with whom they were both involved. Two other women participated in the communications. Over seven hours, the online argument escalated, culminating in an agreement to meet to fight one another. Ultimately, Wallace-Lee instructed Tarver to come to her residence. At 11:00 p.m., Tarver and the other women arrived at Wallace-Lee's home. The State's evidence showed that while in Wallace-Lee's back yard, Tarver threw a punch at Wallace-Lee, who then stabbed Tarver, piercing her heart; Wallace-Lee also stabbed Tarver in her face and twice in her back. In contrast, Wallace-Lee presented evidence that she stabbed Tarver after the other two women joined in the fight against her. Tarver died from her injuries. At Wallace-Lee's murder and felonious assault trial, the trial court provided a self-defense instruction without objection from Wallace-Lee. The jury convicted her of both offenses.

{¶ 47} On appeal, Wallace-Lee claimed the trial court erred in its self-defense instruction in several ways, including by providing an inappropriate definition of fault (which mirrored the definition provided by the trial court in this case.) Significantly, Wallace-Lee did not argue on appeal that the instruction was incorrectly stated. *See id.*

at ¶ 26. Rather, she asserted that the court should not have given *any* instruction on fault because the evidence, in her view, showed she was not at fault. Moreover, because she did not object to the trial court's instruction in the trial court, we reviewed the instruction for plain error. We found no plain error existed because Wallace-Lee could not show that the "at fault" instruction caused the jury to reject her claim. We further concluded that the trial court did not err by giving the instruction "because the instruction tracked the language used in persuasive case law, and because there was a legitimate question regarding Wallace-Lee's fault in initiating the fight." *Id*.

{¶ 48} We have since cited *Wallace-Lee* for the proposition that "a person cannot provoke a fight or voluntarily enter combat and then claim self-defense." *See James*, 2d Dist. Montgomery No. 28892, 2021-Ohio-1112, at ¶ 21; *Lovett*, 2d Dist. Montgomery No. 29240, 2022-Ohio-1693, ¶ 42. However, we have not held that *Wallace-Lee*'s definition of fault is appropriate in all self-defense cases, and given our limited, plain-error review of that jury instruction, *Wallace-Lee* cannot reasonably be cited for such a broad proposition.

{¶ 49} The State quotes *State v. Ellis*, 10th Dist. Franklin No. 11AP-939, 2012-Ohio-3586, to support its contention that the second paragraph is an accurate statement of the law regarding fault. *Ellis* stated that "a multitude of courts have found that a defendant is at fault in creating the situation giving rise to the affray or violated a duty to avoid danger or retreat when he chooses to confront the victim, chooses to knowingly go to a place where the victim will be or refuses to move in a direction away from the victim, even when the defendant's action was otherwise completely lawful." *Id*. at ¶ 15. In

*Wallace-Lee,* we noted that the jury instruction at issue appeared to be based on that case law. *Wallace-Lee* at ¶ 25, citing *Ellis*.

**{¶ 50}** We do not find *Ellis*, or the cases it cites, to be persuasive here. First, *Ellis* is factually distinguishable in that the defendant was engaged in an ongoing argument with the victim (similar to *Wallace-Lee*) and continued to follow the victim and his sister, which ultimately led to an escalation of their argument to a physical confrontation. Some cases cited by *Ellis* are similarly distinguishable. Second, some cases cited by *Ellis* clearly relate to the duty to retreat, not fault. *See State v. Hall*, 10th Dist. Franklin No. 04AP-17, 2005-Ohio-335; *State v. Sudberry*, 12th Dist. Butler No. CA2000-11-218, 2001 WL 1402779 (Nov. 13, 2001). We disagree with *State v. Mathews*, 3d Dist. Logan No. 8-02-19, 2002-Ohio-6619, cited by *Ellis*, to the extent that it holds that a person is at fault merely by choosing to ask a neighbor to turn down their loud music.

**{¶ 51}** Under the second paragraph of the trial court's "fault" instruction in this case, the jury could have found Barker at fault without Barker's having engaged in any aggressive or confrontational behavior. Using disjunctive language, Barker could be found to be at fault if he "chose to knowingly go to a place where Christopher Campbell was or refused to move in a direction away from Christopher Campbell, even when the Defendant, Carson Barker's, actions were otherwise lawful." Under the facts of this case, the trial court's instruction was unreasonably broad.

**{¶ 52}** Here, the evidence reflects that Barker was headed to his mother's residence when he noticed Campbell parked near his mother's residence. Although Barker believed Campbell to be following him, Campbell may have been there for an

independent reason (to visit his friend). There was no evidence that the two men were present at West Second and North Antioch Streets for the purpose of a confrontation or to continue an ongoing argument. Barker had previously approached Campbell to ask him why he (Campbell) was following him (Barker), without violence. Barker testified that he was "trying to be assertive" when he approached Campbell's vehicle, but "assertive" does not necessarily mean confrontational.

{¶ 53} The primary question for the jury was who drew their weapon first. Under the given instruction, the jury could have concluded that Campbell drew his weapon first, but Barker nevertheless was at fault simply because he failed to leave the area once he noticed Campbell's vehicle. Such a conclusion is not supported by our case law. Accordingly, the trial court abused its discretion in instructing the jury, as stated in the second paragraph defining "fault," that Barker would be at fault merely by continuing to go to a place where Campbell was or refusing to move in a direction away from Campbell.

### D. Campbell's Duty to Retreat

{¶ 54} Finally, Barker claims that the trial court erred in instructing the jury that Campbell had no duty to retreat.

{¶ 55} Prior to trial, the State requested a castle doctrine instruction for Campbell. Barker opposed the motion, arguing that the castle doctrine removes the duty to retreat as an element of a self-defense claim by a person accused of criminal charges. Barker noted that Campbell had not been accused of a criminal offense involving the use of force and, thus, whether he had a duty to retreat was irrelevant. The trial court granted the State's request and told the jury:

A person who was lawfully in his own vehicle has no duty to retreat before using force in self-defense. If one is assaulted in his own vehicle, he may use such means as are necessary to repel the assailant from the vehicle. This means that Christopher Campbell did not have a duty to retreat before using force to repel the Defendant.

{¶ 56} Barker repeats his prior argument on appeal. He further states that, by providing the instruction, the court suggested that Campbell acted in self-defense and was permitted to draw his weapon because he was in his vehicle, which undermined Barker's self-defense claim. The State responds that the court's instruction was an accurate statement of the law which was pertinent to the evidence at trial.

{¶ 57} The State relies upon *State v. Johnston*, 2d Dist. Montgomery No. 19019, 2002-Ohio-3295, which concerned whether the victim's act of swinging a golf club at the defendant in his (the victim's) own home could provide the "serious provocation" to reduce the defendant's conduct from aggravated murder to manslaughter. Because the victim was within his rights in using reasonable force to repel the defendant from his home, we concluded that it could not. *Id.* at * 3. *Johnston* articulated the castle doctrine, but the case did not involve a claim of self-defense, and we find it inapposite to whether a castle doctrine instruction should be given for a victim where self-defense is at issue.

{¶ 58} In *State v. Ramey*, 2d Dist. Montgomery No. 27636, 2018-Ohio-3072, we addressed whether the trial court abused its discretion in giving a castle doctrine instruction regarding the victim's duty to retreat. At issue there was an instruction that stated: "A person who lawfully is in his residence has no duty to retreat before using force

in self-defense. Where one is assaulted in his home, he may use such means as are necessary to repel the assailant from the home."

{¶ 59} Initially, we noted that the castle doctrine instruction generally is given when a *defendant* who claims self-defense has used force in his or her own home. *Id.* at ¶ 29. We had not found, nor had the State cited, any case in which the instruction was given when the victim was in his or her own home and the defendant claimed self-defense. *Id.* On review, however, we concluded that the trial court did not abuse its discretion in providing the castle doctrine instruction. We reasoned that the instruction was an accurate statement of law, was arguably applicable given that the defendant claimed that the victim had started the altercation, and the trial court had given the instruction – without mentioning the victim's name in connection with it – due to the State's concern that the jury might think that the victim should have left his home to retreat from the conflict. *Id.* at ¶ 30-31.

{¶ 60} As in *Ramey*, the trial court's castle doctrine instruction in this case was a correct statement of the law – when a person is in his or her own vehicle, the person has no duty to retreat before using force in self-defense. Unlike in *Ramey*, however, the trial court here tied the castle doctrine instruction to the victim, stating "This means that Christopher Campbell did not have a duty to retreat before using force to repel the Defendant."

{¶ 61} This additional sentence is potentially problematic. On one hand, the jury could have read the instruction as whole to mean that, if Campbell was acting in self-defense, he had no duty to retreat. However, the jury also could have reasonably

interpreted the instruction to mean that Campbell had no duty to retreat because he was, as a matter of law, acting in self-defense when he engaged in the shoot-out with Barker. By negative implication, Barker therefore was not acting in self-defense.

{¶ 62} We must review the trial court's jury instructions as a whole, and, if taken in their entirety, the instructions fairly and correctly state the law applicable to the evidence presented at trial, reversible error will not be found premised upon the possibility that the jury may have been misled. Upon review of the castle doctrine instruction regarding Campbell, we are hard-pressed to conclude that this instruction creates reversible error.

{¶ 63} Nevertheless, we question of appropriateness of providing a castle doctrine instruction regarding a victim. The question before the jury is whether the *defendant* acted in self-defense. Although a superfluous jury instruction that correctly states the law may be harmless, we caution against including such instructions as a matter of course.

{¶ 64} Barker's first assignment of error is overruled in part and sustained in part.

{¶ 65} In light of our disposition of this assignment of error, Barker's convictions for murder with a firearm specification and discharge of a firearm on or near prohibited premises with a firearm specification must be reversed, and the matter remanded for further proceedings on those charges. However, Barker's conviction for having weapons while under disability is not affected by the error in the jury instructions, and none of his remaining assignments of error challenge that conviction. Accordingly, Barker's conviction for having weapons while under disability will be affirmed.

### III. Conclusion

{¶ 66} The trial court's judgment will be affirmed in part and reversed in part, and the matter will be remanded for further proceedings.

. . . . . . . . . . . . .

TUCKER, P.J., and WELBAUM, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Andrew T. French
Johnna M. Shia
Hon. Mary Katherine Huffman