[Cite as *State v. Irvin*, 2023-Ohio-3274.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | Appeal No. 28495 |
| | : | |
| v. | : | Trial Court Case No. 17-CR-3623 |
| | : | |
| LANCE A. IRVIN | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on September 15, 2023

. . . . . . . . . . .

STEPHEN P. HARDWICK, Attorney for Appellant

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Attorney for Appellee

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} On remand from the Ohio Supreme Court, we must conduct a harmless-error analysis to determine whether the trial court's misallocation of the self-defense burden of proof requires reversal of defendant-appellant Lance A. Irvin's convictions for murder and felonious assault.

{¶ 2} We conclude that Irvin was entitled to a self-defense jury instruction and that

the trial court's erroneous instruction placing the burden of proof on him was not harmless. Accordingly, the trial court's judgment will be reversed as to his murder and felonious-assault convictions, and the case will be remanded for a new trial on those charges. Because Irvin's conviction for tampering with evidence was unaffected by erroneous instruction, we will affirm the trial court's judgment as to that offense.

## I. Background

{¶ 3} A grand jury indicted Irvin on two counts of murder, two counts of felonious assault, and evidence tampering in connection with the shooting death of Jesse Redavide. The case proceeded to a 2019 jury trial during which Irvin admitted the shooting but claimed he had acted in self-defense. The trial court instructed the jury that self-defense was an affirmative defense on which Irvin bore the burden of proof.

{¶ 4} The jury returned guilty verdicts on all charges. After merging allied offenses, the trial court imposed a sentence of 15 years to life in prison for murder with additional consecutive sentences for an accompanying firearm specification and evidence tampering. Irvin appealed, raising four assignments of error. One of them challenged the trial court's allocation of the burden of proof to Irvin on the self-defense issue. Irvin argued that an amendment to the self-defense statute, R.C. 2901.05, had shifted the burden of proof to the prosecution, obligating the State to prove beyond a reasonable doubt that he had not acted in self-defense.

{¶ 5} Upon review, we held that the amendment to R.C. 2901.05 did not apply to Irvin because it took effect on March 28, 2019, which was after he shot and killed Redavide. We rejected an argument that the amendment applied prospectively to trials

held after the amendment's effective date regardless of when the underlying offenses occurred. We overruled each of Irvin's assignments of error and affirmed the trial court's judgment. We also certified a conflict to the Ohio Supreme Court, recognizing that other Ohio appellate districts had reached a contrary conclusion regarding the applicability of R.C. 2901.05's amendment. The Ohio Supreme Court later agreed that a conflict existed.

{¶ 6} While Irvin's appeal was pending, the Ohio Supreme Court decided *State v. Brooks*, 170 Ohio St.3d 1, 2022-Ohio-2478, 208 N.E.3d 751, holding that the amended version of the self-defense statute applied to trials held on or after the amendment's effective date even if the offenses at issue occurred prior to that date. In October 2022, the Ohio Supreme Court vacated our judgment on the authority of *Brooks* and remanded Irvin's case to us to "conduct a harmless error analysis." *State v. Irvin*, 169 Ohio St.3d 276, 2022-Ohio-3587, 203 N.E.3d 709.

## II. Analysis

{¶ 7} The harmless-error rule, Crim.R. 52(A), provides that "any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Under this standard, the State must demonstrate that an error did not affect the defendant's substantial rights. *State v. Gillilan*, 2d Dist. Montgomery No. 29182, 2023-Ohio-325, ¶ 11, citing *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 15. If the State fails to satisfy this burden, we cannot ignore the error and must reverse the conviction. *Id*.

{¶ 8} Here the State first asserts harmless error on the basis that Irvin was not entitled to a self-defense instruction at all. The State argues that his own testimony

negated a self-defense claim and, therefore, the trial court's misallocation of the burden of proof was harmless. In *State v. Cunningham*, 2d Dist. Montgomery No. 29122, 2023-Ohio-157, we addressed such a situation, finding harmless error in the trial court's allocation of the burden of proof where the defendant's own testimony established that the trial court should not have given a self-defense instruction. *See also Brooks* at ¶ 24 (recognizing that error in allocating the self-defense burden of proof is harmless if a defendant was not entitled to a self-defense claim).

{¶ 9} In the present case, however, Irvin was entitled to a self-defense jury instruction. "After arguments are completed, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus. When considering a self-defense instruction, a trial court must determine whether the evidence presented, if believed, reasonably would support a self-defense claim. *State v. Wilson*, 2d Dist. Clark No. 2021-CA-68, 2022-Ohio-3763, ¶ 40.

{¶ 10} A claim of self-defense involving deadly force requires the existence of evidence that "the defendant had a bona fide belief that he or she was in danger of death or great bodily harm[.]" *State v. Barker*, 2d Dist. Montgomery No. 29227, 2022-Ohio-3756, ¶ 22. It also "requires evidence that the defendant had both an objectively reasonable belief and a subjective belief that force was necessary to protect himself or herself." *Id.* at ¶ 27. In addition, a self-defense claim requires consideration of the force used relative to the danger. "If the force used was so disproportionate that it shows a purpose to injure,

self-defense is unavailable." *Id.* Finally, under the law applicable to Irvin, he could not kill in self-defense if he had a reasonable means of retreat from the confrontation.[1] *Id.* at ¶ 23.

{¶ 11} In our prior opinion affirming Irvin's convictions, we summarized his trial testimony as follows:

Testifying on his own behalf, Irvin testified he knew Joseph [Redavide] as the "neighborhood dealer, weed dealer." Tr. p. 856. He further testified that, for the year prior to the shooting, he had gone to Joseph's home "every other day," and they used marijuana and liquid THC. Tr. p. 858. According to Irvin, he got off work around 12:30 a.m. on the morning of the shooting. He testified he was driving from work when another friend, Tenia Lane-Calhoun, called him seeking a ride from work. Irvin picked up Lane-Calhoun, they made some stops, and then they drove to Joseph's home. Irvin testified that Lane-Calhoun waited in the car while Irvin went into the home to get some food and drugs. Irvin testified that Jesse met him just inside the front door, and Irvin could smell alcohol on Jesse's breath. Irvin testified that Jesse yelled, "Joey, your n****r friend is at the door." Tr. p. 866. Irvin testified he asked Jesse why he would say that and Jesse replied, "I don't care about n*****s." *Id.* Irvin claimed Jesse then attacked

---

[1] In April 2021, S.B. 175 took effect, amending R.C. 2901.09 and substantially modifying the duty to retreat in cases involving a self-defense claim. The amendment has no applicability in Irvin's case. It does not apply retroactively to offenses committed before its effective date. *State v. Degahson*, 2d Dist. Clark No. 2021-CA-35, 2022-Ohio-2972, ¶ 23.

and "monkey dunked" him. After Irvin fell to the floor, Jesse grabbed a rifle and hit Irvin in the head. Irvin testified that he feared for his life and thought Jesse would kill him, so he pulled out his own gun, shot Jesse, and then fled the premises. He testified that his gun only had two bullets, and he discharged the second bullet into the floorboard of his Durango SUV. Irvin testified that, as he drove from the scene, he threw the gun into bushes located on Linden Avenue. Irvin testified he thought he parked the vehicle at a relative's home, but he was actually at the wrong home; when he realized his mistake, he had to leave the Durango at the home because the vehicle was out of gas. Irvin testified he and Lane-Calhoun then walked to his stepmother's home, where Irvin spent the night. Irvin was arrested later in the day.

(Footnote omitted.) *State v. Irvin*, 2020-Ohio-4847, 160 N.E.3d 388, ¶ 10 (2d Dist.), *vacated*, 169 Ohio St. 3d 276, 2022-Ohio-3587, 203 N.E.3d 709.

{¶ 12} The State argues that Irvin's testimony did not demonstrate a bona fide belief that he was in imminent danger of death or great bodily harm, did not establish an objectively reasonable belief that deadly force was necessary to protect himself, and did not establish his inability to retreat and avoid the danger.

{¶ 13} Although Irvin claimed Redavide had "monkey dunked" or slammed him to the ground and then hit him in the head with a rifle while he was down, the State notes Irvin's additional testimony that he then got to his feet and was standing beside an open door when he pulled a gun and shot Redavide. *See* Tr. p. 870-971. The State also notes

the absence of testimony from Irvin that Redavide was pointing the rifle at him, overtly threatening to shoot him, or even threatening to strike him with it a second time when Irvin shot and killed Redavide. Under these circumstances, the State asserts that Irvin lacked a bona fide belief of imminent danger of serious injury, that it was unreasonable for him to believe deadly force was necessary, and that he could have escaped by simply exiting the open door.

{¶ 14} Notwithstanding the State's arguments, we believe the trial court correctly found Irvin entitled to a self-defense instruction. Accepting Irvin's testimony as true, a potentially-intoxicated Redavide had made racial slurs against him and slammed him to the ground without provocation before proceeding to strike him in the head with a rifle. Irvin responded by regaining his footing, pulling a gun from his pocket, and firing a shot at Redavide, who remained no more than two feet away. Although Irvin did not specify whether Redavide was pointing the rifle at him, he did testify that Redavide was still holding it. Tr. p. 883.

{¶ 15} Irvin's testimony supported a bona fide belief that he remained in imminent danger of death or great bodily harm. His testimony also supported an objectively reasonable belief that deadly force was necessary to protect himself. According to Irvin, Redavide, who smelled of alcohol, was acting irrationally by displaying unprovoked aggression and already had struck him in the head with a rifle, which Redavide continued to hold. Under these circumstances, a trier of fact could conclude that deadly force was necessary to protect Irvin. As for a duty to retreat, the threat posed by Redavide's rifle at least arguably would not have been negated by Irvin's turning his back and attempting to

flee. A trier of fact could find that such a response by Irvin would not have been a reasonable means of retreat from the confrontation. Therefore, Irvin was entitled to a self-defense instruction.

{¶ 16} Although the instruction was warranted, the State next argues that the trial court's misallocation of the burden of proof was harmless because it did not affect the outcome. The State suggests that the totality of the evidence presented at trial strongly contradicted Irvin's self-defense claim, making it implausible that any reasonable jury would have found self-defense regardless of which party bore the burden of proof. The State notes the existence of evidence controverting Irvin's testimony about the circumstances surrounding the shooting, including eyewitnesses who testified that Redavide's hands were in the air when he was shot. The State also notes other inconsistencies and argues the implausibility of some of Irvin's claims. In essence, the State asks us to conduct a manifest-weight review to determine whether the trial court's misallocation of the self-defense burden of proof constituted harmless error.

{¶ 17} We recently rejected the same argument in *Gillilan*, declining to conduct what would have been in effect a manifest-weight analysis. As in the present case, the defendant in *Gillilan* had been entitled to a self-defense instruction. While giving the instruction, the trial court erroneously had placed the burden of proof on the defendant. On review, we applied the harmless-error standard and reasoned:

> "In examining errors in a jury instruction, a reviewing court must consider the jury charge as a whole and 'must determine whether the jury charge probably misled the jury in a matter materially affecting the

complaining party's substantial rights.' " *Becker v. Lake Cty. Mem. Hosp. W.*, 53 Ohio St.3d 202, 208, 560 N.E.2d 165 (1990). "A substantial right is, in effect, a legal right that is enforced and protected by law." *Cleveland v. Trzebuckowski*, 85 Ohio St.3d 524, 526, 709 N.E.2d 1148 (1999).

As conceded by the State, Gillilan presented evidence at trial which entitled him to an instruction on self-defense. And, as discussed, the trial court provided an incorrect instruction which allocated the burden of proof on self-defense to Gillilan and omitted the State's burden to disprove, beyond a reasonable doubt, Gillilan's claimed use of self-defense. *When, as here, the defendant is entitled to a self-defense instruction, the failure to correctly instruct the jury regarding the burden of proof on self-defense affects a substantial right. Given this, the error is not harmless.*

(Emphasis added.) *Gillilan,* 2d Dist. Montgomery No. 29182, 2023-Ohio-325, at ¶ 12-13.

{¶ 18} Based on our opinion in *Gillilan*, we do not find harmless error here. As in that case, Irvin was entitled to a self-defense instruction, and the trial court's failure to instruct the jury correctly regarding the self-defense burden of proof affected a substantial right. As a result, the error was not harmless.

{¶ 19} Part of the problem with conducting the State's suggested manifest-weight review involves quantifying the impact the faulty instruction had on Irvin's jury. The trial court instructed the jury that Irvin bore the burden of proving self-defense by a preponderance of the evidence. In reality, the State bore the burden of proving beyond a reasonable doubt that Irvin did not act in self-defense. This improper allocation of the

burden of proof was particularly significant in Irvin's case. Because he admitted shooting and killing Redavide, disproving that he acted in self-defense was more than just "an element" of the State's case. With respect to the murder and felonious-assault convictions, disproving self-defense was the case. Thus, the trial court's erroneous instruction obligated Irvin to prove his own innocence on the only issue that mattered.

{¶ 20} In *Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), the U.S. Supreme Court recognized that constitutional due process compels the prosecution to prove all elements of an offense beyond a reasonable doubt and that the Sixth Amendment requires a jury to make the requisite finding of guilt beyond a reasonable doubt. The *Sullivan* Court then explained:

> "It is self-evident, we think, that the Fifth Amendment requirement of proof beyond a reasonable doubt and the Sixth Amendment requirement of a jury verdict are interrelated. It would not satisfy the Sixth Amendment to have a jury determine that the defendant is *probably* guilty, and then leave it up to the judge to determine * * * whether he is guilty beyond a reasonable doubt. * * *

*Id.* at 278.

{¶ 21} In Irvin's case, the absence of self-defense in effect became an element of the State's case on which it bore the burden of proof. *See United States v. Duran*, 133 F.3d 1324, 1331 (10th Cir.1998) (recognizing that "when a defendant has presented sufficient evidence to raise the issue of entrapment for the jury, proof that the defendant was not entrapped effectively becomes an element of the crime"). But because the jury

was instructed that Irvin bore the burden of proof by a preponderance of the evidence, the most we confidently can infer from its verdict is that it found the evidence in equipoise on self-defense or could not determine which party possessed the preponderance of the evidence, meaning that Irvin may have been guilty of murder and felonious assault. By urging us to find harmless error, the State asks us to make the first and only determination that Irvin is guilty of murder and felonious assault beyond a reasonable doubt (because he did not act in self-defense beyond a reasonable doubt).

{¶ 22} In *Sullivan*, the U.S. Supreme Court held that when a jury instruction relieves the prosecution of its burden to prove the elements of an offense beyond a reasonable doubt, harmless error cannot exist:

> * * * There being no jury verdict of guilty-beyond-a-reasonable-doubt, the question whether the same verdict of guilty-beyond-a-reasonable-doubt would have been rendered absent the constitutional error is utterly meaningless. There is no object, so to speak, upon which harmless-error scrutiny can operate. The most an appellate court can conclude is that a jury would surely have found petitioner guilty beyond a reasonable doubt— not that the jury's actual finding of guilty beyond a reasonable doubt would surely not have been different absent the constitutional error. That is not enough. * * * The Sixth Amendment requires more than appellate speculation about a hypothetical jury's action, or else directed verdicts for the State would be sustainable on appeal; it requires an actual jury finding of guilty.

(Citations omitted.) *Sullivan* at 280.

**{¶ 23}** The error in *Sullivan* involved providing the jury with an erroneous reasonable-doubt definition. That defect necessarily permeated the jury's beyond-a-reasonable-doubt findings on all elements of the defendant's murder charge and precluded a finding of harmless error. *Id.* at 280-281.

**{¶ 24}** In a subsequent case, *Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), the U.S. Supreme Court distinguished *Sullivan* and held that the trial court's failure to instruct the jury on just one element of fraud charges against the defendant was harmless error. The *Neder* majority reasoned in part:

It would not be illogical to extend the reasoning of *Sullivan* from a defective "reasonable doubt" instruction to a failure to instruct on an element of the crime. But, as indicated in the foregoing discussion, the matter is not res nova under our case law. And if the life of the law has not been logic but experience, *see* O. Holmes, The Common Law 1 (1881), we are entitled to stand back and see what would be accomplished by such an extension in this case. The omitted element was materiality. Petitioner underreported $5 million on his tax returns, and did not contest the element of materiality at trial. Petitioner does not suggest that he would introduce any evidence bearing upon the issue of materiality if so allowed. Reversal without any consideration of the effect of the error upon the verdict would send the case back for retrial—a retrial not focused at all on the issue of materiality, but on contested issues on which the jury was properly instructed. We do not think the Sixth Amendment requires us to veer away from settled precedent to

reach such a result.

*Id*. at 15.

**{¶ 25}** In a partial dissent, three justices opined that depriving a defendant of a jury verdict beyond a reasonable doubt on one element of an offense was just as unsusceptible to harmless-error review as the error in *Sullivan*. Writing for the dissent, Justice Antonin Scalia reasoned:

> The Court's decision today is the only instance I know of (or could conceive of) in which the remedy for a constitutional violation by a trial judge (making the determination of criminal guilt reserved to the jury) is a repetition of the same constitutional violation by the appellate court (making the determination of criminal guilt reserved to the jury).
>
> * * *
>
> The Court's decision would be wrong even if we ignored the distinctive character of this constitutional violation. The Court reaffirms the rule that it would be structural error (not susceptible of "harmless-error" analysis) to " 'vitiat[e] all the jury's findings.' " * * * A court cannot, no matter how clear the defendant's culpability, direct a guilty verdict. * * * The question that this raises is why, if denying the right to conviction by jury is structural error, taking one of the elements of the crime away from the jury should be treated differently from taking all of them away—since failure to prove one, no less than failure to prove all, utterly prevents conviction.
>
> The Court never asks, much less answers, this question. Indeed, we

do not know, when the Court's opinion is done, how many elements can be taken away from the jury with impunity, so long as appellate judges are persuaded that the defendant is surely guilty. * * *

(Citations omitted.) *Id.* at 32-33 (Scalia, J., dissenting).

{¶ 26} Even accepting the *Neder* majority's holding that it may be harmless error to fail to instruct a jury on a single element of a charge (meaning that there is no jury finding of guilt beyond a reasonable doubt on the missing element), Irvin's case bears more similarity to *Sullivan* than *Neder*.

{¶ 27} Again, the only real dispute with Irvin's murder and felonious-assault charges was whether he acted in self-defense. On that issue, the trial court obligated him to prove his own innocence by a preponderance of the evidence. Irvin improperly was required to establish each element of his self-defense claim by the greater weight of the evidence rather than the State's proving that he did not act in self-defense beyond a reasonable doubt. Much like the error in *Sullivan*, this error by the trial court "vitiate[d] all the jury's findings" as to self-defense. We note too that the omitted element in *Neder* was materiality, which the defendant had not even contested at trial. Unlike *Neder*, the affected issue in Irvin's case was self-defense, which was critical to the murder and felonious-assault charges and was fully litigated by him.

{¶ 28} Similarly to *Neder*, the Ohio Supreme Court has considered a trial court's failure to instruct a jury on an element of an offense. In *State v. Wamsley*, 117 Ohio St.3d 388, 2008-Ohio-1195, 884 N.E.2d 45, the court examined a trial court's omission of an instruction on the culpable mental state for trespass as an element of aggravated burglary. *Id.* at ¶ 1, 14. The *Wamsley* court opined that failure to instruct on an element

of an offense is not structural error and is not always reversible as plain error. In finding no structural error, the Ohio Supreme Court stated that the instructions "did not necessarily render the trial so fundamentally unfair that it could not be a reliable vehicle for the determination of the defendant's guilt or innocence." *Id.* at ¶ 24.

{¶ 29} In *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, 114 N.E.3d 1092, the Ohio Supreme Court discussed *Sullivan*, *Neder*, and *Wamsley* in the course of considering an instruction that told jurors they must find the defendant not guilty if the State "failed to prove beyond a reasonable doubt all the essential elements of aggravated murder." *Id.* at ¶ 121. The defendant argued that the instruction was defective because it should have used the word "any" instead of "all." According to the defendant, the given instruction suggested that he should be acquitted only if the State proved none of the elements. Finding no plain error, the Ohio Supreme Court noted that other portions of the instructions correctly articulated the State's burden of proof as to each element and made clear that acquittal was proper if the State failed to prove any element. *Id.* at ¶ 126-128.

{¶ 30} In *Wilks*, the Ohio Supreme Court also distinguished *Sullivan* and found structural-error analysis to be inappropriate, reasoning:

> The nature of the error here is also different from that in *Sullivan*. The instructions here did not misrepresent "reasonable doubt," and the failure to present more precise instructions did not vitiate all the jury's findings. We conclude that the present case is more analogous to improperly instructing the jury on an element of an offense as in *Wamsley* than to failing to give a proper reasonable-doubt instruction altogether.

*Id.* at ¶ 138.

**{¶ 31}** The error in Irvin's case exceeds the magnitude of the error in *Wamsley* and *Wilks*. As the Ohio Supreme Court noted in *Wilks*, neither of those cases involved failure to give a proper reasonable-doubt instruction. In Irvin's case, however, the trial court's error was much worse than giving an erroneous reasonable-doubt instruction. It *entirely removed* the State's burden of proof beyond a reasonable doubt on the only real issue, self-defense, and obligated Irvin to prove his innocence. This error was even more egregious than the error in *Sullivan*, which involved incorrectly defining the prosecution's burden of proof beyond a reasonable doubt. At a minimum, instructing the jury that Irvin bore the burden of proof by a preponderance of the evidence *was* an overt misstatement of the prosecution's burden of proof just as in *Sullivan*. Removing the State's obligation to disprove that Irvin acted in self-defense and placing the burden of proof on him did "vitiate all of the jury's findings" as to self-defense, the linchpin of his murder and felonious-assault convictions.

**{¶ 32}** In our view, the error at issue necessarily rendered Irvin's trial an unreliable vehicle for the determination of his guilt or innocence. In fact, there still has been no real determination of guilt or innocence beyond a reasonable doubt on the murder and felonious-assault charges. As explained above, because Irvin's jury was instructed that he bore the burden of proof by a preponderance of the evidence, the most its verdict conveyed was that the evidence was equally balanced on self-defense or that the jury could not determine which party possessed the preponderance of the evidence, leaving open the possibility that he may have been guilty of murder and felonious assault. We decline to uphold a conviction under this standard, which is objectively worse than

misstating the beyond-a-reasonable-doubt definition as in *Sullivan*.

{¶ 33} Based on this court's prior precedent in *Gillilan* and the reasoning set forth above, we conclude that the trial court's erroneous allocation of the burden of proof on self-defense was not harmless error. Finally, even if we were not to characterize the trial court's error as "structural error" per se, it still fundamentally impacted how the jury made its decision, and we cannot say with any confidence that it did not affect the outcome with respect to the murder and felonious-assault offenses.

### III. Conclusion

{¶ 34} The trial court's judgment is affirmed in part and reversed in part. The judgment is affirmed with respect to Irvin's conviction for evidence tampering. That conviction was unrelated to the self-defense instruction, which was relevant only to the murder and felonious-assault charges.

{¶ 35} The trial court's judgment is reversed with respect to Irvin's convictions for murder, felonious assault, and the accompanying firearm specification, and the case is remanded for a new trial on those charges.

. . . . . . . . . . . . .

EPLEY, J. and LEWIS, J., concur.