[Cite as *State v. Lovett*, 2022-Ohio-1693.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29240 |
| | : | |
| v. | : | Trial Court Case No. 2020-CR-3360 |
| | : | |
| DEVION LOVETT | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 20th day of May, 2022.

. . . . . . . . . .

MATHIAS H. HECK, JR. by LISA M. LIGHT, Atty. Reg. No. 0097348, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
  Attorney for Plaintiff-Appellee

KRISTIN L. ARNOLD, Atty. Reg. No. 0088794, 120 West Second Street, Suite 1717, Dayton, Ohio 45402
  Attorney for Defendant-Appellant

. . . . . . . . . . . .

EPLEY, J.

{¶ 1} Devion Lovett was found guilty after a jury trial in the Montgomery County Court of Common Pleas of two counts of felonious assault (deadly weapon and serious physical harm), each with a firearm specification, and one count of improper handling of a firearm in a motor vehicle. After a mistrial on an additional count of felonious assault (deadly weapon), Lovett pled no contest to that offense. After merging some offenses, the trial court imposed an agreed aggregate sentence of 6 to 7½ years in prison.

{¶ 2} Lovett appeals from his convictions, claiming that his speedy trial rights were violated and that the trial court abused its discretion in denying his request for a jury instruction on self-defense. For the following reasons, the trial court's judgment will be affirmed.

## I. Facts and Procedural History

{¶ 3} On November 19, 2020, Lovett was indicted on two counts of felonious assault (deadly weapon), one count of felonious assault (serious physical harm), and one count of improper handling of a firearm in a motor vehicle. Each felonious assault charge contained a three-year firearm specification. The charges arose from an altercation at a gas station between Lovett and two other individuals during which Lovett retrieved a gun from his car and fired several shots, hitting one of the men. Lovett filed a notice that he was claiming self-defense and defense of another.

{¶ 4} After delays occasioned by motions and a continuance due to the COVID-19 pandemic, Lovett moved to dismiss the case on speedy trial grounds. Soon after,

Lovett's defense counsel moved to withdraw, and Lovett retained new counsel. The trial court denied the motion to dismiss, and the matter proceeded to a jury trial on June 15, 2021.

{¶ 5} At trial, the State presented evidence that on October 22, 2020, Jacob Webb and Alex Bieker drove to the Valero gas station on Valley Street in Riverside. Webb parked at a pump, and the two men went inside the store to purchase some items. Webb's car was parked facing Lovett's, but he testified that he did not notice Lovett there. After completing their purchases, Webb and Bieker got back into Webb's car. Webb drove a short distance from the pump, but stopped before pulling into the street so that he could select music on his phone. At this juncture, Webb's car was nearly parallel to Lovett's, but facing in opposite directions. The front of Webb's car angled toward Valley Street.

{¶ 6} While Webb was picking out music, Lovett exited his car and took approximately four steps over to Webb's driver's door. Lovett opened the door, grabbed Webb's steering wheel, and starting punching him. Bieker heard Lovett say something to the effect of "I told you I was going to find you" or "I told you I would get you." As Webb's car drifted forward and Webb tried to put the vehicle in park, Bieker got out of the passenger side, came around the back of the vehicle, and hit Lovett in the face in an attempt to "get him off" of Webb. Lovett was knocked to the ground. Webb's car curved around toward the left rear of Lovett's car and stopped.

{¶ 7} Lovett got up and turned his attention to Bieker, who was backing away and asking Lovett to let them leave. While Lovett advanced on Bieker, Webb got out of his

car, and Bieker called to Webb for help. Webb then started to run toward Lovett on the driver's side of Lovett's car. Lovett turned from Bieker and ran along the passenger side of his car, with Webb and Bieker following. When Lovett circled around and reached his driver's side door, he grabbed a gun and turned to shoot at Webb and Bieker, who then were by the trunk of Lovett's car. Upon seeing a gun, Webb and Bieker both turned to run away. Lovett fired multiple shots; two shots struck the ground near Webb's hands after he tripped, and one shot hit Bieker's right thigh. Webb and Bieker both testified that they did not have a gun when the altercation occurred. Lovett left the scene in his car, and Webb and a witness, Mindy Payne, each called 911. Webb identified Lovett as the shooter, and Payne provided a description of Lovett and his vehicle.

{¶ 8} Lovett's girlfriend, Valerie Depoyster, who was seated in Lovett's car throughout the incident, corroborated much of Webb's and Bieker's testimony about what had occurred. She further testified that she had not been threatened during the incident and had not been fearful for her safety. After Depoyster and Lovett left the gas station, Lovett dropped her off at a hotel in Beavercreek where they were staying. Neither called 911 to report an assault. Later in the day, Lovett asked Depoyster to meet him near Cincinnati and bring him some clothes and other items. Lovett told her that he would let her know when he was somewhere safe.

{¶ 9} Officer Michael Brewer, an evidence technician, recovered four shell casings from the scene, and Detective Michael Sullivan was assigned to investigate the shooting. Webb and Depoyster both told Sullivan that Lovett was the shooter. A few days later, Lovett was apprehended in Indianapolis, Indiana. Lovett admitted to Detective Sullivan

that he had shot at Webb and Bieker, and he said that he had gotten rid of the gun.   In recorded jail phone calls after his arrest, Lovett described how scared Webb looked when he opened the car door.   He also admitted that he had taken three shots and had been aiming for Webb when he fired his gun.

{¶ 10} Lovett testified in his own defense.   He said that on October 22, 2020, he was at Valero with his girlfriend to purchase gas when he saw Webb.   According to Lovett, Webb had previously confronted him due to a fatal automobile collision involving Lovett and Webb's brother several years earlier.   Lovett commented to Depoyster, "It's the guy that's been threatening me."   As Webb was leaving the gas station, Lovett decided "to approach the situation and tell him to stop threatening me and my family and squash it right there."   Lovett got out of his car and approached Webb's car, but he testified that he left his gun in his car because he "had no intention to hurt him."

{¶ 11} Lovett admitted that he "did walk aggressively" to Webb's vehicle, and when he opened Webb's car door, he told Webb that his (Webb's) brother hit the side of his car and to stop threatening him.   Lovett denied striking Webb.   He testified that Webb threw his phone at Lovett and jumped into the back seat.   Lovett said that he grabbed the steering wheel to keep Webb's car from sliding into traffic.   When Lovett turned around, he was hit in the left eye by Bieker, knocking him to the ground.   The impact also knocked out Lovett's contact lens and caused his eye to swell shut.

{¶ 12} Lovett testified that when he got back up, he asked Bieker why he had punched him.   Lovett heard Bieker tell Webb, "Come on, Jake, let's go" and saw Webb

running at him, clutching his pants. Lovett testified that he was in fear for his life. He stated that he did not get in his car and drive away, because Webb and Bieker were close to him and he "felt like if [he] just sat down in the car, they both would have opened up the doors, and [he] was scared for [his] girlfriend's safety, too." He stated that he grabbed his gun to protect his and his girlfriend's lives and fired "I thought, three, but I guess four" shots at the ground. Lovett then sped away. He stated that he left the gas station because he did not want his girlfriend involved, and he left the area because he did not know what to do.

{¶ 13} Lovett requested a jury instruction on self-defense, which was denied. The trial court reasoned that the evidence showed that Lovett was at fault in creating the situation that gave rise to the altercation and shooting, that he used deadly force, and that Lovett violated his duty to retreat.

{¶ 14} After deliberating, the jury found Lovett guilty of the felonious assault charges related to Bieker, which were charged in Counts 1 (deadly weapon) and 3 (serious physical harm), as well as the firearm specifications attendant to Counts 1 and 3. It also found him guilty of improper handling of a firearm (Count 4). The trial court declared a mistrial as to Count 2, the felonious assault (deadly weapon) charge related to Webb, but Lovett subsequently pled no contest to that offense. As part of his plea, the State dismissed the firearm specification accompanying Count 2 and the parties agreed to a sentence of 6 to 7½ years in prison on all of the charges.

{¶ 15} At sentencing, the trial court merged Count 3 into Count 1 and imposed concurrent sentences totaling a minimum of 3 to a maximum of 4½ years in prison, plus

three years for the firearm specification to be served prior and consecutively to the sentences for the offenses.

{¶ 16} Lovett appeals from his convictions, raising two assignments of error.

## II. Speedy Trial

{¶ 17} In his first assignment of error, Lovett claims that the trial court erred in denying his motion to dismiss based on a violation of his speedy trial rights.

{¶ 18} The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution. Ohio's speedy trial statute, R.C. 2945.71, "was implemented to incorporate the constitutional protection of the right to a speedy trial." *Brecksville v. Cook*, 75 Ohio St.3d 53, 55, 661 N.E.2d 706 (1996). Accordingly, the speedy trial statutes must be strictly construed against the government. *Id.*

{¶ 19} R.C. 2945.71 designates specific time requirements for the government to bring an accused to trial. Under that statute, a felony defendant must be brought to trial within 270 days of arrest. R.C. 2945.71(C). Each day during which the accused is held in jail in lieu of bail on the pending charge is counted as three days. R.C. 2945.71(E). The day of arrest is not counted when calculating an accused's speedy trial time. *State v. Cimpaye*, 2020-Ohio-2740, 154 N.E.3d 415, ¶ 17 (2d Dist.).

{¶ 20} A defendant can establish a prima facie case for a speedy trial violation by demonstrating that the trial was held past the time limit set by statute for the crime with which the defendant is charged. *State v. Gray*, 2d Dist. Montgomery No. 20980, 2007-Ohio-4549, ¶ 15. "If the defendant can make this showing, the burden shifts to the State

to establish that some exception[s] applied to toll the time and to make the trial timely. If the State does not meet its burden, the defendant must be discharged. R.C. 2945.73." *Id.*

{¶ 21} The time within which a defendant must be brought to trial may be extended only for the reasons specifically enumerated in R.C. 2945.72. *State v. Brewer*, 2d Dist. Montgomery Nos. 22159, 22160, 2008-Ohio-2715, ¶ 37, citing *State v. Palmer*, 84 Ohio St.3d 103, 702 N.E.2d 72 (1998). Those reasons include any period of delay necessitated by a motion instituted by the accused, the period of any continuance granted on the accused's own motion, and "the period of any reasonable continuance granted other than upon the accused's own motion." R.C. 2945.72 (E), (H). A discovery request is a tolling event under R.C. 2945.72(E). *State v. Brown*, 98 Ohio St.3d 121, 2002-Ohio-7040, 781 N.E.2d 159, syllabus.

{¶ 22} Sua sponte continuances fall within continuances "granted other than on the accused's own motion." R.C. 2945.72(H). When continuing a case sua sponte, the trial court must enter the order of continuance and the reasons for the order by journal entry prior to the expiration of the time limits prescribed in R.C. 2945.71 for bringing a defendant to trial. *State v. Ramey*, 2012-Ohio-6187, 986 N.E.2d 462, ¶ 12 (2d Dist.); *State v. Mincy*, 2 Ohio St.3d 6, 9, 441 N.E.2d 571 (1982). "The journalization of reasons is necessary to permit the appellate court to determine whether, on the accused's claim that his statutory speedy trial rights were violated, the period of delay resulting from the sua sponte continuance was nevertheless 'reasonable.' " *Ramey* at ¶ 13, citing R.C. 2945.72(H).

{¶ 23} In this case, Lovett was arrested on the charges on November 17, 2020. Day one of his speedy trial time began on the next day, November 18, 2020. Lovett remained incarcerated from that day until his jury trial on June 15, 2021. Due to his incarceration, the State had 90 calendar days – until February 15, 2021 – to bring him to trial. The following events occurred which tolled Lovett's case and extended the speedy trial deadline.

{¶ 24} On December 2, 2020, Lovett filed a demand for discovery, which was received by his attorney the next day (1 day tolled). On December 7, 2020, Lovett filed a motion for bond review (which was denied on December 21) and his attorney requested continuances of a status conference until December 28, 2022 (21 days tolled). The speedy trial deadline was, therefore, extended from February 15 until March 9, 2021.

{¶ 25} At the December 28, 2020 scheduling conference, the trial court apparently set the final pretrial conference for March 22, 2021 and the jury trial for March 29, 2021, which was beyond the speedy trial deadline. A scheduling order was filed the next day.

{¶ 26} In a decision filed on December 31, 2020, the trial court provided its explanations for scheduling Lovett's jury trial beyond the early March 2021 speedy trial deadline. The court stated that the common pleas court had issued a series of emergency and administrative orders in response to the "ongoing public health crisis caused by the COVID-19 pandemic," which included the suspension of jury trials. The trial court noted that the Attorney General of the State of Ohio had opined that the current pandemic emergency provided a reasonable basis for a continuance of a trial beyond the time limitations imposed under R.C. 2945.71, as well as under state and federal

constitutional guarantees. The Ohio Supreme Court also had issued guidance, which included limiting in-person proceedings.

{¶ 27} The trial court further recognized that, as of the date of its ruling, "the public health crisis continues" and Montgomery County was under a Level 3 (red) public emergency pursuant to the Ohio Public Health Advisory System, "which means that there is 'very high exposure and spread' and activities are to be limited as much as possible." At that time, Ohio was under a mandatory mask order and nighttime curfew imposed by the Governor, and there were limits, with exceptions, on the size of public gatherings. The Ohio Department of Health continued to recommend that people remain approximately six feet away from each other in public settings, as large gatherings of people exacerbated community spread and put those attending at greater risk of exposure to COVID-19.

{¶ 28} The trial court found that "[l]imiting the number of people in a courtroom and maintaining the appropriate social distancing make jury service difficult to accomplish within the parameters set by the recommendations of the Ohio Department of Health. Even with precautions being taken in the courtroom, jurors would likely be in situations where they would be in close proximity to each other, thereby increasing the risk of spreading COVID-19." In addition, the court noted that some individuals might be uncomfortable participating in a jury trial due to the potentially high rate of exposure to and risk of contracting COVID-19 and that a jury trial "poses a risk to the defendant in this case, who is currently housed at the Montgomery County Jail," and potentially to those housed at the jail.

**{¶ 29}** The trial court also commented on the effect of COVID-19 on its docket. It stated: "Due to the inability to conduct jury trials during the months of March through July of 2020 trials were rescheduled. Those trials are now set for January, February and March of 2021. The court has two (2) to three (3) jury trials scheduled each week in January, February and early March of 2021. Accordingly, a trial cannot be scheduled in this matter at or prior to these speedy trial deadline dates. * * * At this time, it is not practicable for this court to conduct a jury trial as a remote proceeding."

**{¶ 30}** We find the trial court's sua sponte continuance of Lovett's trial date until March 29, 2021 was reasonable. Shortly before the trial court's sua sponte continuance, the Ohio Supreme Court recognized the seriousness of the public health emergency, noting that "[i]t is now December 2020, and we are approaching what could be the height of the COVID-19 pandemic. The daily numbers of confirmed COVID-19 cases, hospitalizations, and deaths have significantly increased." *In re Disqualification of Fleegle*, 161 Ohio St.3d 1263, 2020-Ohio-5636, 163 N.E.3d 609, ¶ 5. The supreme court emphasized that, "[d]uring this public-health emergency, a judge's priority must be the health and safety of court employees, trial participants, jurors, and members of the public entering the courthouse." *Id*. at ¶ 8. It reiterated that "all Ohio judges have been advised [that] trial judges have the authority to continue trials for defendants on a case-by-case basis without violating speedy-trial requirements." *Id*. at ¶ 7. The supreme court cited R.C. 2945.72(H) and the Ohio Attorney General's opinion, which approved of the suspension of jury trials to prevent the spread of COVID-19 and opined that "they may do so consistent with state and federal speedy-trial obligations. * * * Although tolling

speedy trial time by suspending jury trial activity is an extraordinary step, it is lawful – and responsible – to do so during a pandemic emergency." The supreme court held that it was reasonable to continue a trial because of a pandemic state of emergency. *Id.*; *see also State v. Voris*, 2d Dist. Miami No. 2021-CA-2, 2022-Ohio-152, ¶ 30 (the trial court lawfully scheduled defendant's jury trial outside of the statutorily-required speedy trial time, pursuant to R.C. 2945.72(H), based on the COVID-19 pandemic and the fact that the county remained in a state of emergency due to the virus).

{¶ 31} Moreover, R.C. 2945.72(H) "contemplates continuances resulting from the court's docket pressures." *State v. Tillman*, 2d Dist. Clark No. 2006-CA-118, 2008-Ohio-2060, ¶ 17, citing *State v. Lee*, 48 Ohio St.2d 208, 357 N.E.2d 1095 (1976); *State v. Dillon*, 2d Dist. Greene No. 2020-CA-4, 2020-Ohio-5031, ¶ 39. The trial court's need for a continuance in Lovett's case stemmed in part from delays caused by the COVID-19 pandemic in older criminal cases, and the record reflects that March 29, 2021 was the earliest possible trial date that fit within both the court's and counsel's schedules. Both the on-going pandemic and the docket pressures resulting from prior restrictions on jury trials justified a reasonable continuance of Lovett's trial date. Here, the continuance until March 29, 2021, a delay of approximately three weeks, was reasonable.

{¶ 32} After the jury trial was scheduled for March 29, 2021, an available trial date opened in February 2021. The trial court contacted counsel about the possibility of holding the jury trial then, but defense counsel was unavailable.

{¶ 33} On March 9, 2021, Lovett filed a motion to dismiss on speedy trial grounds. "A motion to dismiss under speedy trial grounds operates to toll the statute." *State v.*

*Lewis*, 2d Dist. Montgomery No. 28962, 2021-Ohio-1895, ¶ 62, citing *State v. Sanchez*, 110 Ohio St.3d 274, 2006-Ohio-4478, 853 N.E.2d 283, ¶ 28. A week later, defense counsel filed a motion to withdraw, which also tolled the speedy trial time pursuant to R.C. 2945.72(E).

**{¶ 34}** Lovett retained counsel, who was substituted on March 22, 2021; the trial court vacated the March 29 trial date due to the substitution of counsel and indicated that a pretrial conference would be held on March 29 instead. New defense counsel agreed that he was in the process of obtaining the State's discovery from prior defense counsel and would be in a better position to set a new trial date at that time. The court filed an entry continuing the case from March 22, 2021 until March 29, 2021, at the request of defense counsel. At a later pretrial conference, the trial court scheduled the final pretrial conference for June 7, 2021, and the jury trial for June 14, 2021. On June 9, 2021, the court overruled Lovett's March 9 motion to dismiss in a written decision. The continuance of the trial date from March 29 to June 14 was occasioned by Lovett's pending motion and substitution of counsel. Consequently, this period of delay was not chargeable to the State.

**{¶ 35}** The court indicated at the June 7, 2021 final pretrial conference that trial would begin on June 15, 2021. We cannot say that this one-day delay (from June 14 to June 15) was unreasonable.

**{¶ 36}** We therefore conclude that the trial court did not err when it overruled Lovett's motion to dismiss on speedy trial grounds and that Lovett's statutory speedy trial rights were not violated when he was brought to trial on June 15, 2021.

{¶ 37} In his appellate brief, Lovett states in conclusory fashion that his constitutional right to a speedy trial also was violated. App.R. 16(A)(7) requires an appellant's brief to contain "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." App.R. 12(A)(2) further provides that an appellate court "may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)." Lovett has not supported his constitutional argument with any legal authority or analysis, and we decline to address it.

{¶ 38} Lovett's first assignment of error is overruled.

### III. Self-Defense

{¶ 39} In his second assignment of error, Lovett claims that the trial court abused its discretion in failing to instruct the jury on self-defense.

{¶ 40} A person may act in self-defense, defense of another, or defense of that person's home. R.C. 2901.05(B)(1). The self-defense statute provides that "[i]f, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, * * * the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense * * *." R.C. 2901.05(B)(1).

{¶ 41} To warrant an instruction on self-defense, there must be evidence

presented that supports the conclusion that the defendant used force to defend himself or herself. R.C. 2901.05(B)(1). Specifically, to establish self-defense, a defendant must introduce evidence showing that: (1) he or she was not at fault in creating the violent situation; (2) he or she had a bona fide belief that he or she was in imminent danger of bodily harm; and (3) he or she did not violate any duty to retreat or avoid the danger. *State v. Brown*, 2017-Ohio-7424, 96 N.E.3d 1128, ¶ 24 (2d Dist.), citing *State v. Thomas*, 77 Ohio St.3d 323, 326, 673 N.E.2d 1339 (1997).

{¶ 42} "It is well established that a person cannot provoke a fight or voluntarily enter combat and then claim self-defense." *State v. James*, 2d Dist. Montgomery No. 28892, 2021-Ohio-1112, ¶ 21, citing *State v. Wallace-Lee*, 2d Dist. Greene No. 2019-CA-19, 2020-Ohio-3681, ¶ 39. Moreover, a defendant must have a bona fide belief that the use of force was the only means of escape. *James* at ¶ 21. "Part of this entails a showing that the defendant used 'only that force that [was] reasonably necessary to repel the attack.' " *Wallace-Lee* at ¶ 42, citing *State v. Bundy*, 2012-Ohio-3924, 974 N.E.2d 139, ¶ 55 (4th Dist.). If the force used was so disproportionate that it shows a purpose to injure, self-defense is unavailable. *Id.* at ¶ 43, quoting *State v. Macklin*, 8th Dist. Cuyahoga No. 94482, 2011-Ohio-87, ¶ 27.

{¶ 43} Generally, a person has a duty to retreat, if possible, before using lethal force. *State v. Willford*, 49 Ohio St.3d 247, 250, 551 N.E.2d 1279 (1990); *State v. Dale*, 2d Dist. Champaign No. 2012-CA-20, 2013-Ohio-2229, ¶ 15. The exception, known as the Castle Doctrine, applies if a confrontation happens in a person's home, in which case there is no duty to retreat. R.C. 2901.09(B); *James* at ¶ 22.

{¶ 44} We review a trial court's denial of a requested jury instruction for "an abuse of discretion under the facts and circumstances of the case." *State v. Taylor*, 2d Dist. Montgomery No. 28668, 2020-Ohio-6854, ¶ 10, quoting *State v. Wolons*, 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989); *State v. Blair*, 2d Dist. Montgomery No. 28904, 2021-Ohio-3370, ¶ 10.

{¶ 45} The trial court found that Lovett was at fault in creating the situation, that he used deadly force, and that he violated his duty to retreat, and we find no abuse of discretion in these determinations. First, we agree that Lovett did not establish the first element of self-defense, i.e., that he was not at fault in creating the violent situation. Prior to the altercation, Webb and Bieker were in Webb's vehicle; they had pulled away from the gas pump and were facing Valley Street, preparing to leave the gas station. There is no indication that Webb and Bieker were aware of Lovett's presence, and Webb testified that he did not notice Lovett. Lovett initiated the encounter by exiting his vehicle, walking "aggressively" to Webb's car, throwing open the driver's door, and engaging with Webb, both physically and verbally. Depoyster heard Lovett yelling at Webb, and Lovett did not deny it. The surveillance video from the Valero shows Lovett initiating the altercation.

{¶ 46} In addition, Lovett did not establish that his use of a gun was his only means of escape and that he did not violate his duty to retreat. At several points before he retrieved his gun from his car, Lovett could have de-escalated the situation, reentered his car, and left the gas station. Most notably, after Bieker punched Lovett, knocking him down, nothing prevented Lovett from getting into his car and leaving while Bieker was

backing away from him and Webb was still in his own vehicle. Lovett testified that he feared for himself and his girlfriend once Webb and Bieker started chasing him around his car, but he had prolonged the encounter himself by that point.

**{¶ 47}** Upon review of the evidence presented at trial, the trial court's denial of Lovett's request for a jury instruction on self-defense was not an abuse of discretion. Lovett's second assignment of error is overruled.

### IV. Conclusion

**{¶ 48}** The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

WELBAUM, J. and LEWIS, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Lisa M. Light
Kristin L. Arnold
Hon. Timothy N. O'Connell