[Cite as *State v. Trigg*, 2023-Ohio-3660.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 29637 |
| | : | |
| v. | : | Trial Court Case No. 2022 CR 01448 |
| | : | |
| JOHNNY LEE TRIGG | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on October 6, 2023

. . . . . . . . . . .

MICHAEL O. MILLS, Attorney for Appellant

MATHIAS H. HECK, JR., by MICHAEL P. ALLEN, Attorney for Appellee

. . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} Appellant, Johnny Lee Trigg, appeals from his convictions for felony murder and having weapons while under disability following a jury trial and a bench trial in the Montgomery County Court of Common Pleas. In support of his appeal, Trigg claims that the trial court erred by failing to suppress statements he made during an interview with detectives on grounds that the detectives did not stop the interview after he invoked his

right to counsel.   Trigg also claims that the trial court erred by denying his request for a self-defense jury instruction.   In addition, Trigg claims that his trial counsel provided ineffective assistance by failing to include all necessary facts regarding his self-defense claim in the written notice required by Crim.R. 12.2.   For the reasons outlined below, we disagree with all of Trigg's claims and will affirm the judgment of the trial court.

**Facts and Course of Proceedings**

{¶ 2} On June 2, 2022, a Montgomery County grand jury returned a six-count indictment charging Trigg with the following offenses:

- felony murder (felonious assault/serious physical harm)

- felony murder (felonious assault/deadly weapon)

- felonious assault (serious physical harm)

- felonious assault (deadly weapon)

- having weapons while under disability (prior felony offense of violence)

- having weapons while under disability (prior felony drug offense)

{¶ 3} With the exception of the two counts for having weapons while under disability, each of the indicted counts had an accompanying firearm specification.   The charges stemmed from allegations that on May 18, 2022, Trigg shot and killed 29-year-old Myquan Taylor outside Trigg and Taylor's respective residences at the Desoto Bass apartment complex in Dayton.

{¶ 4} Following his indictment, Trigg pled not guilty to all the charges and filed a motion to suppress.   As part of his motion to suppress, Trigg argued for the suppression

of statements he made during a May 25, 2022 interview with Detectives David Posma and Zack Farkas of the Dayton Police Department.  Trigg claimed that his statements should be suppressed because the detectives did not stop the interview after he invoked his right to counsel.   The trial court held a hearing on the matter and thereafter overruled Trigg's motion to suppress.

{¶ 5} After the trial court overruled Trigg's motion to suppress, the matter proceeded to a jury trial on the counts for felony murder and felonious assault and their accompanying firearm specifications. The two counts for having weapons while under disability were tried to the bench, as Trigg waived his right to a jury trial for those counts.

{¶ 6} At Trigg's jury trial, the State presented testimony from Taylor's girlfriend, Dareona Acker, who witnessed the shooting incident in question.   Acker testified that on the morning of May 18, 2022, she had been with Taylor at their apartment helping Taylor get ready to leave for work.   Acker testified that after Taylor kissed her and their seven-week-old daughter goodbye, she watched Taylor walk outside to his car and light a blunt. Before Taylor was able to step inside his car, Acker saw Trigg, who lived two doors down, rush out of his apartment holding a gun.   Acker testified that Trigg ran toward Taylor and said something to Taylor in an angry tone.   Acker testified that she then saw Trigg attempt to fire his gun twice at Taylor's face, but the gun jammed both times.   Acker then saw Taylor back up and run away from Trigg.

{¶ 7} Continuing, Acker testified that Trigg had chased Taylor and then successfully fired his gun twice at Taylor.   When Trigg's gun fired the second time, Acker saw Taylor fall to the ground.   Acker testified that while Taylor was lying on the ground,

she saw Trigg stand at Taylor's feet and shoot Taylor again. Acker then saw Trigg run to his apartment. After witnessing the shooting, Acker called 9-1-1. Acker, Acker's twin brother who ran outside to check on Taylor, and the first police officer to arrive at the scene of the shooting all testified that Taylor did not have a gun on or near his person.

{¶ 8} Taylor was taken to the hospital and treated for three days before succumbing to his injuries. The testimony from the coroner who examined Taylor's body and the autopsy photographs admitted into evidence established that Taylor had two gunshot wounds to the backside of his body. The coroner testified that one of the wounds was a graze wound to Taylor's right hip and the other wound was an entrance wound to Taylor's right buttocks. The coroner testified that the gunshot to Taylor's right buttocks was the cause of Taylor's death, as the bullet moved through Taylor's pelvis, hit his right femoral artery, and caused significant internal bleeding.

{¶ 9} In his defense, Trigg testified that he had first encountered Taylor in 2013 or 2014. Trigg claimed that during that encounter, Taylor had banged on the door to his residence and complained about one of his friends taking Taylor's parking space. Trigg testified that he next encountered Taylor in the spring of 2022 on Mother's Day weekend. During that encounter, Trigg claimed that Taylor had approached him in a hostile manner for an unknown reason after Trigg drove up to his residence. Trigg testified that he and Taylor had argued and that the argument had escalated. According to Trigg, Taylor hit him in the mouth twice with a pistol, which caused him to suffer a "fractured dental line" and cut gums. Trial Tr. Vol. IV, p. 492. Trigg also claimed that Taylor had pointed the pistol at his (Trigg's) head for five to seven minutes, which led him to believe that Taylor

was going to kill him.

{¶ 10} Trigg testified that after Taylor assaulted him on Mother's Day weekend,[1] he encountered Taylor again on the morning of May 18, 2022, when Trigg was transferring his belongings from his residence to his truck because he was moving. Trigg testified that while he was in the process of transferring his belongings, he heard a door slam and saw Taylor coming out of his residence. According to Trigg, Taylor saw him outside and then went back into his residence. Trigg testified that after he saw Taylor go back inside his residence, he (Trigg) grabbed his gun for protection and hid behind the driver's side of his truck. Trigg testified that his truck had tinted windows, which allowed him to watch Taylor without Taylor seeing him. Trigg testified that while he was hiding behind his truck, he saw Taylor come back out of his residence with a pistol hanging out of his pocket. Trigg testified that Taylor then walked toward the front of his truck, lit a blunt, and said something that Trigg couldn't make out. Trigg testified that Taylor's voice was loud and aggressive and that Taylor's hand was on the pistol in his pocket. At that point, Trigg testified that he came out of hiding and said "here I am" to Taylor. Trial Tr. Vol. IV, p. 503.

{¶ 11} Trigg testified that when he came out of hiding, Taylor, who had been facing the other direction, turned around and aimed his gun at him (Trigg). Trigg testified that Taylor then attempted to shoot his gun, but the gun did not fire. Trigg testified that after Taylor's gun failed to fire, Taylor ran away. Trigg then admitted to firing his gun at Taylor

---

[1] During trial, Trigg insisted that Taylor had assaulted him over Mother's Day weekend, which fell on May 7-8, 2022. However, medical records obtained from the hospital where Trigg sought treatment for the injuries he sustained during the assault indicated that the assault had occurred on April 24, 2022.

three to five times. Trigg specifically testified that he had fired his gun at Taylor as Taylor was running away from him. After shooting Taylor, Trigg ran into his apartment and then fled on foot to his cousin's house, where he was apprehended by law enforcement eight days later.

{¶ 12} In addition to admitting that he had shot Taylor, Trigg admitted to having prior felony convictions in Ohio for having weapons while under disability, improper handling of a firearm in a motor vehicle, aggravated burglary, felonious assault, and a federal conviction for aiding and abetting in the possession of cocaine with intent to distribute. Trigg also admitted that he was not allowed to have a firearm in his possession.

{¶ 13} After the defense rested its case, Trigg's trial counsel requested a jury instruction on self-defense. The trial court, however, found that Trigg's testimony established that Trigg was not entitled to a self-defense instruction and therefore denied the request. The jury thereafter deliberated and found Trigg guilty of both counts of felony murder, both counts of felonious assault, and the accompanying firearm specifications. The trial court also found Trigg guilty of both counts of having weapons while under disability.

{¶ 14} At sentencing, the trial court merged all the felony murder and felonious assault counts into one conviction. The State elected to have Trigg sentenced for the first count of felony murder, i.e., felonious assault/serious physical harm. The trial court also merged the two counts of having weapons while under disability, and the State elected to have Trigg sentenced for the prior-felony-offense-of-violence count. The trial

court imposed a prison term of 15 years to life for felony murder, a consecutive three-year prison term for the accompanying firearm specification, and a consecutive 36-month prison term for having weapons while under disability.   The trial court also imposed 1,220 days in prison for Trigg's violating his parole in another case.   Accordingly, Trigg received a total, aggregate term of 21 years to life in prison plus 1,220 days for his parole violation.

{¶ 15} Trigg now appeals from his conviction, raising three assignments of error for review.

## First Assignment of Error

{¶ 16} Under his first assignment of error, Trigg challenges the trial court's decision overruling his motion to suppress the statements he made during his May 25, 2022 interview with Det. Posma and Det. Farkas.   Trigg argues that his statements should have been suppressed because the detectives proceeded with the interview despite his invoking his right to counsel.   According to Trigg, this violated the constitutional protections set forth in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).   Under the circumstances of this case, we disagree.

### *Standard of Review*

{¶ 17} "Appellate review of a motion to suppress presents a mixed question of law and fact."   *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the

credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972. "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982). "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist.1997). Accordingly, "[t]he trial court's application of law to the findings of fact is subject to a de novo standard of review." (Citation omitted.) *State v. Shepherd*, 2d Dist. Montgomery No. 29123, 2021-Ohio-4230, ¶ 10.

*Miranda Protections and Waiver of Rights*

**{¶ 18}** In *Miranda*, the United States Supreme Court adopted procedural safeguards to secure the right against compulsory self-incrimination as guaranteed by the Fifth Amendment to the United States Constitution. *State v. Hudson*, 2d Dist. Montgomery No. 29333, 2022-Ohio-3253, ¶ 30; *In re M.H.*, 163 Ohio St.3d 93, 2020-Ohio-5485, 168 N.E.3d 439, ¶ 18. "*Miranda* requires police to give a suspect certain prescribed warnings before [a] custodial interrogation commences and provides that if the warnings are not given, any statements elicited from the suspect through police interrogation in that circumstance must be suppressed." *State v. Petitjean*, 140 Ohio App.3d 517, 523, 748 N.E.2d 133 (2d Dist.2000). Specifically, "a suspect 'must be warned that he has a right to remain silent, that any statement he does make may be

used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.' " *M.H.* at ¶ 18, quoting *Miranda* at 444. "If these *Miranda* warnings are not given prior to a custodial interrogation, the prosecution may not use the statements obtained from the suspect at trial." *Id.*, citing *Miranda* at 444.

{¶ 19} "[A] a suspect may effectively waive the rights conveyed in the *Miranda* warnings only if the waiver is made voluntarily, knowingly and intelligently." *State v. Dailey*, 53 Ohio St.3d 88, 91, 559 N.E.2d 459 (1990), citing *Miranda* at 444. "The waiver of *Miranda* rights is valid only if (1) the waiver was 'the product of a free and deliberate choice rather than intimidation, coercion, or deception[,]' and (2) the person had 'a full awareness of both the nature of the right[s] being abandoned and the consequences of the decision to abandon [them].' " *State v. Stapleton*, 2d Dist. Montgomery No. 29736, 2023-Ohio-3085, ¶ 23, quoting *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). (Other citation omitted.)

{¶ 20} "The State bears the burden of proving a knowing, voluntary, and intelligent waiver of *Miranda* rights." *Id.* at ¶ 27, citing *State v. Martin*, 151 Ohio St.3d 470, 2017-Ohio-7556, 90 N.E.3d 857, ¶ 100. " 'An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver * * *.' " *State v. Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶ 106, quoting *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979). *See also State v. Dennis*, 79 Ohio St.3d 421, 425, 683 N.E.2d 1096 (1997) ("[e]vidence of a written waiver form signed by the accused is strong proof that the waiver was valid").

**{¶ 21}** In this case, the parties do not dispute that Trigg's interview with Det. Posma and Det. Farkas was a custodial interrogation that required *Miranda* warnings. There is also no dispute that Det. Posma provided *Miranda* warnings to Trigg prior to the interview by going over a pre-interview form that set forth each of the *Miranda* rights, which Trigg initialed and indicated he understood. In addition, there is no dispute that Det. Posma went over a waiver of rights section on the pre-interview form, which Trigg signed and indicated he understood. Despite this, Trigg claims that his *Miranda* protections were violated because the detectives failed to terminate the interview after he made a statement that invoked his right to counsel.

*Miranda Right to Counsel*

**{¶ 22}** "When a suspect invokes his right to counsel, police officers must cease interrogation until counsel is present." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 171, citing *Edwards v. Arizona*, 451 U.S. 477, 484-485, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). "However, for this principle to apply, ' "the suspect must *unambiguously* request counsel." ' " (Emphasis sic.) *Id.*, quoting *State v. Williams*, 99 Ohio St.3d 439, 2003-Ohio-4164, 793 N.E.2d 446, ¶ 32, quoting *Davis v. United States*, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). "If an accused makes a statement concerning the right to counsel 'that is ambiguous or equivocal' or makes no statement, the police are not required to end the interrogation * * * or ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights[.]" *Berghuis v. Thompkins*, 560 U.S. 370, 381, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010), quoting *Davis*

at 461-462.

{¶ 23} "The question whether a suspect invoked his or her right to counsel is an 'objective inquiry.' " *State v. Raber*, 189 Ohio App.3d 396, 2010-Ohio-4066, 938 N.E.2d 1060, ¶ 17 (9th Dist.), quoting *Davis* at 459. *Accord State v. Ford*, 2023-Ohio-2220, __ N.E.3d __, ¶ 47 (9th Dist.). "Further, a suspect's alleged invocation must be examined 'not in isolation but in context.' " *Raber* at ¶ 17, quoting *State v. Murphy*, 91 Ohio St.3d 516, 520-521, 747 N.E.2d 765 (2001). "Invocation of the *Miranda* right to counsel 'requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.' " *Davis* at 459, quoting *McNeil v. Wisconsin*, 501 U.S. 171, 178, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). "[A] reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel * * * do[es] not require the cessation of questioning." (Emphasis sic.) *Id.*

{¶ 24} In this case, the trial court found that after going over the waiver of rights section of the pre-interview form with Trigg, Det. Posma asked Trigg if he wanted to talk with him and Det. Farkas. The trial court found that Trigg responded: "[W]ell, my attorney advised me not to, but I am going to say what happened that night." Decision, Order, and Entry Overruling Motion to Suppress (Sep. 29, 2022), p. 3. The trial court found that Det. Posma thereafter instructed Trigg to sign the waiver portion of the pre-interview form if he wanted to talk, and that Trigg then immediately executed the waiver and participated in the interview.

{¶ 25} The aforementioned findings of fact were supported by competent, credible

evidence in the record. *See* State's Suppression Exhibit 1 (pre-interview and waiver of rights form) and State's Suppression Exhibit 2 (video of interview). When applying the applicable legal standard to those findings, we conclude that Trigg did not make an unambiguous or unequivocal statement invoking his right to counsel; Trigg simply stated that he had previously talked to an attorney who had advised him to remain silent—not that he wanted to speak with an attorney or have one present during the interview. Although Trigg mentioned that the attorney had advised him to remain silent, Trigg specifically told the interviewing detectives that he was going to say what had happened, and then he proceeded to sign the *Miranda* waiver and talk to the detectives. When viewed objectively, Trigg's statement and actions could not have reasonably been construed to be "an expression of a desire for the assistance of an attorney." *Davis*, 512 U.S. at 459, 114 S.Ct. 2350, 129 L.Ed.2d 362. Rather, they indicated an express desire to speak with the detectives.

{¶ 26} Because Trigg did not unambiguously or unequivocally invoke his right to counsel, the interviewing detectives were not required to terminate the interview. As a result, the statements Trigg made during the interview were not subject to suppression on Fifth Amendment self-incrimination grounds.

{¶ 27} Trigg's first assignment of error is overruled.


## Second Assignment of Error

{¶ 28} Under his second assignment of error, Trigg contends that the trial court erred by denying his request for a self-defense jury instruction. We disagree.

**{¶ 29}** "After arguments are completed, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus. "Requested jury instructions should ordinarily be given if they are correct statements of law, if they are applicable to the facts in the case, and if reasonable minds might reach the conclusion sought by the requested instruction." (Citations omitted.) *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 240.

**{¶ 30}** "When considering a self-defense instruction, the trial court must determine whether the evidence presented, if believed, reasonably would support a self-defense claim." *State v. Cunningham*, 2d Dist. Montgomery No. 29122, 2023-Ohio-157, ¶ 13, citing *State v. Wilson*, 2d Dist. Clark No. 2021-CA-68, 2022-Ohio-3763, ¶ 40. "To warrant an instruction on self-defense, there must be evidence presented that supports the conclusion that the defendant used force to defend himself or herself." *State v. Lovett*, 2d Dist. Montgomery No. 29240, 2022-Ohio-1693, ¶ 41, citing R.C. 2901.05(B)(1). Specifically, "a defendant must introduce evidence showing that: (1) he or she was not at fault in creating the violent situation; (2) he or she had a bona fide belief that he or she was in imminent danger of bodily harm; and (3) he or she did not violate any duty to retreat or avoid the danger." *Id.*, citing *State v. Brown*, 2017-Ohio-7424, 96 N.E.3d 1128, ¶ 24 (2d Dist.), citing *State v. Thomas*, 77 Ohio St.3d 323, 326, 673 N.E.2d 1339 (1997).

**{¶ 31}** As to the first element of self-defense, "[i]t is well established that a person cannot provoke a fight or voluntarily enter combat and then claim self-defense." *State v.*

*James*, 2d Dist. Montgomery No. 28892, 2021-Ohio-1112, ¶ 21, citing *State v. Wallace-Lee*, 2d Dist. Greene No. 2019-CA-19, 2020-Ohio-3681, ¶ 39. "[T]he second element of self-defense (bona fide belief) ' "requires consideration of the force that was used in relation to the danger the accused believed he was in." ' " *State v. Barker*, 2022-Ohio-3756, 199 N.E.3d 626, ¶ 28 (2d Dist.), quoting *State v. Rothermel*, 2d Dist. Montgomery No. 26004, 2014-Ohio-3168, ¶ 14, quoting *State v. Bayes*, 2d Dist. Clark No. 2000-CA-0032, 2000 WL 1879101, *4 (Dec. 29, 2000). "It is well established that a person may only use 'that force which is reasonably necessary to repel the attack.' " *Id.*, quoting *State v. Paschal*, 2d Dist. Montgomery No. 18262, 2001 WL 395354, *2 (Apr. 20, 2001), quoting *State v. Williford*, 49 Ohio St.3d 247, 249, 551 N.E.2d 1279 (1990). "If the force used was so disproportionate that it shows a purpose to injure, self-defense is unavailable." *Id.*, citing *Wallace-Lee* at ¶ 43.

**{¶ 32}** As to the third element of self-defense, we note that the law in Ohio now indicates that "a person has no duty to retreat before using force in self-defense * * * if that person is in a place in which the person lawfully has a right to be." R.C. 2901.09(B). Accordingly, the law has "remove[d], in most cases, the duty to retreat before using self-defense." *State v. Degahson*, 2d Dist. Clark No. 2021-CA-35, 2022-Ohio-2972, ¶ 15.

**{¶ 33}** "[T]he trial judge is in the best position to gauge the evidence before the jury and is provided the discretion to determine whether the evidence adduced at trial was sufficient to require an instruction." *State v. Fulmer*, 117 Ohio St.3d 319, 2008-Ohio-936, 883 N.E.2d 1052, ¶ 72, citing *State v. Wolons*, 44 Ohio St.3d 64, 541 N.E.2d 443 (1989), paragraph two of the syllabus. Accordingly, we review a trial court's refusal to submit a

requested jury instruction for an abuse of discretion. *Wolons* at 68; *State v Barker*, 2022-Ohio-3756, 199 N.E.3d 626, ¶ 18 (2d Dist.). Most instances of abuse of discretion occur when a trial court makes a decision that is unreasonable. *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.,* 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.*

{¶ 34} Upon review, we find that the trial court reasonably concluded that the testimony and evidence presented at trial did not entitle Trigg to a self-defense jury instruction. Even crediting Trigg's testimony that he feared Taylor due to Taylor's previously having assaulted him, and even crediting Trigg's testimony that Taylor had tried to fire a gun at him during the encounter at issue, the fact remained that Trigg testified that Taylor had run away after his gun failed to fire. Trigg then specifically admitted to firing multiple shots at Taylor as Taylor was running away from him. *See* Trial Tr. Vol. IV, p. 530. It is also significant that the evidence established that both of Taylor's gunshot wounds were inflicted on the backside of his body.

{¶ 35} Once Taylor ran away, Trigg could no longer have had a bonafide belief that he was in imminent danger of bodily harm. Despite this, Trigg fired multiple shots at Taylor as he was running away. As previously discussed, a defendant can only use force that is reasonably necessary to repel the attack. *Barker*, 2022-Ohio-3756, 199 N.E.3d 626, at ¶ 28. Here, Trigg's testimony established that Trigg used force while Taylor was retreating, not attacking, which meant Trigg's force was disproportionate and showed a purpose to injure Taylor. Therefore, the trial court did not abuse its discretion

by finding that the evidence did not warrant a jury instruction on self-defense.

{¶ 36} Trigg's second assignment of error is overruled.

**Third Assignment of Error**

{¶ 37} Under his third assignment of error, Trigg claims that his trial counsel provided ineffective assistance by failing to include all necessary facts regarding his self-defense claim in the written notice required by Crim.R. 12.2. We again disagree.

{¶ 38} This court reviews alleged instances of ineffective assistance of trial counsel under the two-prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which was adopted by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Pursuant to those cases, in order to prevail on an ineffective assistance claim, a defendant must show that his trial counsel rendered deficient performance and that his counsel's deficient performance prejudiced the defense. *Strickland* at paragraph two of the syllabus; *Bradley* at paragraph two of the syllabus. The failure to make a showing of either deficient performance or prejudice defeats a claim of ineffective assistance of counsel. *Strickland* at 697.

{¶ 39} To establish deficient performance, a defendant must show that his trial counsel's performance fell below an objective standard of reasonable representation. *Id.* at 688. In evaluating counsel's performance, a reviewing court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

**{¶ 40}** To establish prejudice, a defendant must show that there is "a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204, citing *Strickland* at 687-688 and *Bradley* at paragraph two of the syllabus. " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Bradley* at 142, quoting *Strickland* at 694.

**{¶ 41}** As previously discussed, Trigg claims that his trial counsel performed deficiently by failing to include all necessary information in the notice of self-defense required by Crim.R. 12.2, which provides as follows:

> Whenever a defendant in a criminal case proposes to offer evidence or argue self-defense, defense of another, or defense of that person's residence, the defendant shall, not less than thirty days before trial in a felony case and fourteen days before trial in a misdemeanor case, give notice in writing of such intent. The notice shall include specific information as to any prior incidents or circumstances upon which defendant intends to offer evidence related to conduct of the alleged victim, and the names and addresses of any witnesses defendant may call at trial to offer testimony related to the defense. If the defendant fails to file such written notice, the court may exclude evidence offered by the defendant related to the defense, unless the court determines that in the interest of justice such evidence should be admitted.

Crim.R. 12.2.

{¶ 42} In this case, after testifying that Taylor had struck him in the mouth with a pistol over Mother's Day weekend in 2022, Trigg attempted to testify about another encounter he had had with Taylor that allegedly occurred between the Mother's Day weekend assault and the May 18th shooting. The State, however, objected to Trigg's testifying regarding that encounter on grounds that it had not been contained in Trigg's Crim.R. 12.2 notice. The trial court sustained the State's objection, and Trigg was prohibited from testifying regarding his additional encounter with Taylor. *See* Trial Tr. Vol. IV, p. 501-502. Trigg now suggests that his trial counsel's failure to include the information regarding his additional encounter with Taylor in the Crim.R. 12.2 notice prejudiced him because it prevented him from giving testimony in support of his self-defense claim.

{¶ 43} Even if we were to determine that Trigg's trial counsel performed deficiently by failing to include the information at issue in the Crim.R. 12.2 notice, Trigg cannot establish that he was prejudiced by counsel's failure; Trigg would not have been entitled to a self-defense jury instruction even if his trial counsel had included the information regarding his prior encounter with Taylor in the Crim.R. 12.2 notice. Regardless of what happened between Trigg and Taylor during their prior encounters, Trigg testified that, on the morning of the shooting, he fired multiple shots at Taylor while Taylor was running away from him. That testimony, combined with the evidence establishing that Taylor was shot in the backside of his body, prevented a self-defense claim because it showed that Trigg had not had a bonafide belief that he was in imminent danger of bodily harm. It also indicated that Trigg shot Taylor with the purpose to injure him, not to defend against

an attack. Accordingly, counsel's failure to include the information at issue in the Crim.R. 12.2 notice had no effect on the outcome of Trigg's trial, meaning that Trigg was not prejudiced by counsel's failure to include that information in the notice. Without a showing of prejudice, Trigg's ineffective assistance of counsel claim necessarily fails.

{¶ 44} Trigg's third assignment of error is overruled.

## Conclusion

{¶ 45} Having overruled all three assignments of error raised by Trigg, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, J. and EPLEY, J., concur.